Diane E. DAVIS, Appellant,

v.

Carson W. MARKLEY, Warden, Fed. Ref. for Women, Appellee.

No. 78–6259.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 15, 1978.

Decided Jan. 4, 1979.

James M. Phemister, Associate Professor of Law, Washington & Lee University, Lexington, Va., for appellant.

James S. Arnold, Asst. U. S. Atty., Charleston, W. Va. (Robert B. King, U. S. Atty., and Barbara A. Nicastro, Asst. U. S. Atty., Charleston, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BUTZNER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

Petitioner Diane E. Davis, then incarcerated at the Federal Correctional Institution, Alderson, West Virginia, sought a writ of habeas corpus in district court[1] alleging that the Bureau of Prisons had erroneously computed the date on which she would be eligible for unconditional discharge under the Federal Youth Corrections Act. The issue to be resolved is whether three separate time periods amounting to 293 days, during which petitioner was on stay of execution of sentence, were "operative time" within the meaning of 18 U.S.C. § 5017(c), which states:

> A youth offender committed under section 5010(b) of this chapter . . . shall be discharged unconditionally on or before six years from the date of his conviction.

The date of Davis' conviction was March 26, 1973.[2] If the 293 days are operative, she will be eligible for unconditional discharge on March 26, 1979. The Bureau of Prisons, taking the position that the time was inoperative, set the discharge date at January 12, 1980. The district court, adopting the Report and Recommendations of a United States Magistrate, determined that the 293 days were inoperative time and accordingly denied relief. We reverse.

The three separate time periods at issue may be fixed by a brief chronology of events. On January 29, 1973, petitioner pleaded guilty before the District Court for the Western District of Missouri to charges of forging and uttering. On March 26, 1973, the court suspended imposition of sentence and placed her on probation for three

---

1. 28 U.S.C. § 2241.

2. See note 3 infra.

years. 18 U.S.C. § 5010(a). The parties agree that this was the "date of conviction" within the meaning of § 5017(c).[3]

On August 19, 1975, petitioner's probation was revoked and the court ordered her committed to the custody of the Attorney General for observation and report, but suspended operation of the order until August 27, 1975. This 7 days is the first time period at issue. On November 5, 1975, petitioner was committed to the custody of the Attorney General for treatment and supervision, 18 U.S.C. § 5010(b); however, on November 24, 1975, the court stayed execution of the sentence. Several successive stays were granted until August 12, 1976, when, after a hearing concerning petitioner's recent violations of state law, the court vacated its stay order and reaffirmed her commitment to custody. This 279 days is the second time period at issue. One final stay was granted on August 27, 1976, on petitioner's motion, and she was incarcerated on September 3, 1976. This 7 days is the final time period at issue.

Although the language of 18 U.S.C. § 5017(c) is unambiguous, as petitioner urges, her argument that the six year period contained therein must always run without interruption goes too far.[4] "The purpose of Congress in passing the Youth Correction Act was to permit federal judges, in their discretion, to sentence and treat youth offenders in line with modern trends in penology which stress correctional rehabilitation rather than retributive punishment."

*Frye v. Moran*, 302 F.Supp. 1291, 1294 (W.D.Tex.), *aff'd*, 417 F.2d 315 (5th Cir. 1969). On the premise that a youthful offender cannot benefit from correctional rehabilitation when [s]he is not under any supervision, courts have interpreted the statute to exclude certain periods of time from the six year computation. *Frye v. Moran, supra* (time on bail pending appeal excludable); *Suggs v. Daggett*, 522 F.2d 396 (10th Cir. 1975) (time on escape excludable).[5] We agree that in the former situation, where the offender is contesting the validity of the sentence, and in the latter situation, where the offender has refused to submit to the correctional process, the purposes of the Act would not be furthered by including these time periods in the total sentence computation.

Therefore, our inquiry is whether during the 293 days during which petitioner was on stay of execution of sentence she was in "constructive custody," *Suggs v. Daggett*, 522 F.2d at 397; if so, the Act's concern for correctional rehabilitation is met and the time must be considered operative. We find that petitioner's time on stay was tantamount to time on probation and was thus operative time within 18 U.S.C. § 5017(c). The stay orders required petitioner to regularly report her employment status to the court, and allowed the sentencing judge the flexibility to attempt to allow petitioner to rehabilitate herself through employment rather than incarceration. She remained at

---

**3.** *But cf. Jenkins v. U. S.*, 555 F.2d 1188 (4th Cir. 1977). The parties do not argue the applicability of *Jenkins* to § 5017(c), and we express no view on the merits of this issue.

**4.** Petitioner bolsters her "plain meaning" argument by reference to the Bureau of Prisons' *Sentence Computation Manual*, which states:
> The term "conviction" is the key word in establishing the beginning date of a YCA sentence . . . [It] means the date the judgment or sentence was imposed . . . If probation is granted . . . and the probation is later revoked, the sentence must be computed from the date probation is granted, i. e., computed uninterruptedly from the date of conviction.

*Sentence Computation Manual*, Chapter 7620.1 (January 9, 1974), pp. 1–2. However, this lan-

guage is qualified in other sections of the Manual, and in any event, it is not sufficient for issuance of the Writ that petitioner claims to be held in custody in violation of Bureau of Prisons policy.

**5.** These judicially carved exceptions to § 5017(c) were subsequently codified in 28 C.F.R. § 2.10(c), which states:
> Service of the sentence of a committed youth offender . . . commences to run from the date of conviction and is interrupted only when such prisoner or parolee (1) is on bail pending appeal; (2) is in escape status; (3) has absconded from his or her district of supervision; or (4) comes within the [civil contempt] provisions of paragraph (b) of this section.

all times within the supervisory ambit of the correctional process. To penalize her now by terming this period of time "inoperative" would be inconsistent with the beneficial purposes of the Federal Youth Corrections Act, and unnecessarily impinge upon the flexibility of the sentencing judge to attempt rehabilitative means short of incarceration.

The judgment of the district court is reversed, and the case is remanded with orders that the Writ shall issue.

*REVERSED AND REMANDED FOR ISSUANCE OF THE WRIT.*