John Riley **HENRIQUE**, Petitioner,

v.

**UNITED STATES MARSHAL, and United States Parole Commission, Respondents.**

No. C–78–1328 SW.

United States District Court, N. D. California.

June 26, 1979.

Charles R. Garry, Nancy Van Zwalen-burg, Garry, Dreyfus, McTernan, Brotsky, Herndon & Pesonen, Inc., San Francisco, Cal., for petitioner.

## MEMORANDUM OPINION AND ORDER

SPENCER WILLIAMS, District Judge.

John Riley Henrique brings this petition for a writ of habeas corpus challenging his arrest more than six years after he was first sentenced under the Youth Corrections Act for alleged parole violations. His petition raises three issues: whether his Youth Act sentence was tolled while he absconded from supervision; whether the Parole Commission is estopped from asserting jurisdiction over him; and whether his arrest pursuant to an apparently expired warrant was unlawful. For the reasons set forth more fully below the petition is granted.

Petitioner was sentenced on April 3, 1972 as a youthful offender under 18 U.S.C. § 5010(b) for[1] possession of a controlled substance with intent to distribute. His sentence began running April 3, 1972 when he was admitted to the Federal Correctional Institution at Lompoc, California. He was released from Lompoc on August 31, 1973 to remain under supervision until March 31, 1978 pursuant to the provisions of 18 U.S.C. § 5017(c).[2]

In August of 1974 petitioner was arrested in Newport Beach, California and charged with contributing to the delinquency of a minor. Although the delinquency charge was later dropped, petitioner did plead guilty to a charge of giving a false name to the arresting police officers. The regional parole board was notified in October and a warrant application for petitioner's arrest

G. William Hunter, U. S. Atty., Sanford Svetcov, F. Steele Langford, Cedric C. Chao, Asst. U. S. Attys., San Francisco, Cal., for respondents.

1. Title 18 § 5010(b) provides:

 If the court shall find that the convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Commission as provided in section 5017(c) of this chapter.

2. Title 18 § 5017(c) provides:

 A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction.

was filed. The application listed four bases for possibly revoking parole: (1) giving a false name to an arresting officer; (2) failing to report to a probation officer; (3) leaving the district without permission; and (4) associating with a person having a criminal record. The warrant issued on December 10, 1975 by a member of the United States Board of Parole was clearly imprinted with the words "THIS WARRANT CANNOT BE EXECUTED NOR CAN SUBJECT BE DETAINED IN CUSTODY UPON AUTHORITY OF THIS WARRANT AFTER 3–31–78."

At the time the warrant was issued petitioner had not absconded from parole supervision. He had returned to the Eastern District of California after his Newport Beach arrest and reported to his parole officer. In March 1976, however, the United States Marshal's office notified the parole officer that it was unable to locate the petitioner to execute the warrant. His status as an absconder was confirmed by a parole report dated May 14, 1976.

Almost two years later, in April of 1978 petitioner sought to rectify his parole problems. He consulted an attorney who contacted an official of the Parole Commission. His attorney alleges he was verbally informed any warrant which may have been outstanding based upon the alleged parole violations in 1975 had expired on March 31, 1978, and petitioner would not be arrested on the basis of any such warrant. The Parole Commission official also is alleged to have said the only thing that would toll the running of the six year period was an escape from prison—a parole violation would not toll the statutory period. Petitioner's attorney claims to have been given the same information by an officer of the San Diego Probation Office.

Despite these alleged assurances petitioner was arrested by FBI agents at approximately 9:30 a. m. on June 13, 1978 when he was about to appear in San Francisco Municipal Court for a preliminary hearing on a state controlled substances distribution charge. Thereafter, the agents delivered petitioner to the San Francisco City jail and advised the United States Marshal of his apprehension. In turn, the Marshal's office called the United States Parole Commission. At approximately 5:26 p. m. on the same day the Parole Commission dispatched a teletype authorizing the Marshal to assume custody of the petitioner. The teletype read as follows:

THIS CONFIRMS OUR PHONE CONVERSATION OF 6–13–78 RE: SUBJECT'S CUSTODY IN SAN FRANCISCO. THIS TELETYPE AUTHORIZES YOU TO ASSUME CUSTODY OF SUBJECT AS A PAROLE VIOLATOR. EVEN THOUGH SUBJECT IS A YCA CASE WITH AN EXPIRATION DATE OF 3–31–78 HE HAD ABSCONDED FROM SUPERVISION AND THEREFORE OWES MORE TIME. WARRANT AND WARRANT APPLICATION TO FOLLOW. PLEASE CONFIRM THIS TELETYPE WHEN CUSTODY ASSUMED.

Apparently, the Commission decided not to issue a new warrant although a supplemental warrant application was supplied on June 21, 1978. The supplemental application added abscondence from parole supervision to the four other grounds for revoking Mr. Henrique's parole.

### Tolling the Sentence

The Youth Corrections Act provides without exception a youth offender "shall be discharged unconditionally on or before six years from the date of his conviction.[3]" 18 U.S.C. § 5017(c). However, an interpretive regulation enacted under the authority of the 1976 Parole Commission and Reorganization Act has specified certain events

---

**3.** One argument made by the government is that the statute contemplates discharge *from the custody of the Attorney General* which cannot occur if the parolee has absconded from supervision and thereby evaded the "constructive custody" of parole. *Cf. Zerbst v. Kidwell,* 304 U.S. 359, 361, 58 S.Ct. 872, 82 L.Ed. 1399 (1938). This argument is no more than a variation of the government's basic thesis that a sentence is not served by mere lapse of time without supervision or incarceration.

which toll the running of a youth offender's sentence. The regulation, as first promulgated in 1976, indicated the sentence of youth offender was interrupted while such offender was on bail pending appeal or in escape status. 41 Fed.Reg. 19327 (1976) codified at 28 C.F.R. § 2.10(b) (1976). As amended in 1977 the regulation now reads:

Service of the sentence of a committed youth offender . . . commences to run from the date of conviction and is interrupted only when such prisoner or parolee (1) is on bail pending appeal; (2) is in escape status; (3) has absconded from parole supervision; or (4) comes within the provisions of paragraph (b) of this section [sentenced for civil contempt]. 28 C.F.R. § 2.10(c) (1978).

Mr. Henrique asserts his sentence was to run from April 3, 1972 until March 31, 1978, at which time he would be unconditionally discharged in accordance with § 5017(c) despite his two year abscondence from parole supervision. Application of the subsequently enacted regulation to toll the running of his sentence, he reasons, would violate his constitutional right to be free from the imposition of ex post facto laws.

■ The government does not claim continuing jurisdiction over petitioner based on 28 C.F.R. § 2.10(c). Indeed, such a position would be untenable since the Ninth Circuit has ruled the 1976 Parole Commission and Reorganization Act and regulations promulgated thereunder cannot be applied retroactively. *DePeralta v. Garrison*, 575 F.2d 749 (9th Cir. 1978); *White v. Warden*, 566 F.2d 57 (9th Cir. 1977); *but see Rifai v. United States Parole Commission*, 586 F.2d 695 (9th Cir. 1978).[4] Instead, the government argues Youth Corrections Act sentences have always been tolled when youth offenders abscond from supervision; in other words, the regulations merely codified existing law.

A similar issue was presented in *Ogg v. Klein*, 572 F.2d 1379 (9th Cir. 1978), where the Ninth Circuit ruled that a youth offend-

er's *escape from custody* tolled his sentence regardless of the applicability of any regulation providing as much. In reaching its decision the court placed heavy reliance on *Suggs v. Daggett*, 522 F.2d 396 (10th Cir. 1975) and *Hartwell v. Jackson*, 403 F.Supp. 1229 (D.D.C.1975), aff'd mem., 178 U.S.App. D.C. 276, 546 F.2d 1042 (D.C.Cir.1976), two cases antedating the regulation. The Ninth Circuit quoted with approval the following passage from *Hartwell*:

[I]t is unrealistic to suggest that Congress intended to repeal this general rule [that escape tolls a sentence] by implication. While much can be said for assuming that Congress meant unequivocally what it said, it is unwarranted to stretch an inflexible interpretation beyond the realm of reason. Can the Court realistically assume the Congress believed youthful offenders were being rehabilitated while in escape status and that the beneficent purposes of the Youth Corrections Act were being accomplished while an offender lived without supervision in violation of his commitment? Surely not. Reason, justice and tradition strongly suggest that the Court must recognize the commonsense practicalities of the situation presented and refuse to be compelled into an absurd and unforeseen result by procrustean rules of statutory interpretation. No one can sensibly conclude that Congress without a word in the legislative history, intended a novel and illogical result that youthful offenders who escaped from custody would still receive credit for serving a sentence they did not serve. 572 F.2d at 1382 quoting 403 F.Supp. at 1230–31.

Naturally, the government contends the *Ogg* rationale mandates a similar conclusion in this case because escapees and absconders equally are denied the "beneficent purposes" of the Act. That the proper focus of the court's inquiry should be the presence or absence of rehabilitative supervision, the government claims, is further supported by

---

4. The Supreme Court has not decided whether retroactive application of the parole release guidelines violates the ex post facto clause.

*United States v. Addonizio*, —— U.S. ——, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

pre-regulation cases holding a Youth Act sentence is tolled while the offender is released on bail pending appeal, *Frye v. Moran*, 302 F.Supp. 1291 (D.C.Tex.1969), or serving a sentence for civil contempt, *United States v. Marshall*, 532 F.2d 410 (5th Cir. 1976). *See also Davis v. Markley*, 589 F.2d 784 (4th Cir. 1979). The government reasons it would be an "illogical and absurd result" to enforce the mandatory language of the statute without regard to the clear congressional purpose of rehabilitating youthful offenders by beneficial corrective treatment.

Petitioner, on the other hand, finds reason to distinguish between escapees and absconders based upon the following facts. Escape is a crime whereas abscondence from parole supervision is simply a parole violation. Furthermore, escape generally involves flight which by its very nature endangers the lives of guards and other prisoners. Insofar as the rehabilitative purpose of the Act is concerned, petitioner sees no basis for distinguishing between absconders and other parole violators because the youth offender who continuously violates his parole for six years but reports to his probation officer is not rehabilitated although he is unconditionally discharged.

█ The court is mindful that escape is a more aggravated circumstance than abscondence from parole supervision and that many youth offenders do not benefit from their time on parole. However, the controlling factor is the possibility of correction through incarceration or supervision not the ultimate success thereof. If this court were to hold that abscondence from parole supervision did not toll the running of a Youth Act sentence it would be a clear invitation to all youth offenders who anticipated a revocation of their parole to elect to "serve" the remainder of their six year sentence underground rather than in prison. It would also encourage parolees who disliked the constraints placed upon them by their probation officers to enjoy unrestricted freedom in hiding. Surely Congress did not intend to make the beneficent purpose of the Act so easily evaded.

Mr. Henrique seeks to distinguish *Ogg* on other grounds. He urges the government's position, namely that 28 C.F.R. § 2.10(c) merely restated existing law, is disproven by the amendment to the regulation and the practices of the Parole Commission itself.

As noted above, the regulation as promulgated in 1976 identified escape and release on bail pending appeal as factors that would suspend the running of a Youth Corrections Act sentence. 41 Fed.Reg. 19327 (1976) codified at 28 C.F.R. § 2.10(b) (1976). When it was amended in 1977 to add abscondence from supervision the following explanation was given by the Chairman of the Parole Commission:

> The Commission also adopts with change its proposed rule at § 2.10(c), by which absconders from parole supervision under the Youth Corrections Act will not be given credit for time spent in absconder status. *This change will result in like treatment for persons in absconder as well as escape status, and equates absconding with escape.* Only one comment was received specifically referring to this change, in which a U.S. Probation Officer agreed that a Youth Act parolee should not escape apprehension for parole violations solely because he eludes law enforcement officers beyond the expiration date of his sentence. 42 Fed.Reg. 12044 (1977) (emphasis added).

The change in the regulation and this accompanying explanation provides some evidence the Commission changed its interpretation of the law, evidence which petitioner claims is bolstered by the Commission's practices and representations in this case.

The warrant under which Mr. Henrique was arrested bore the legend "THIS WARRANT CANNOT BE EXECUTED NOR CAN SUBJECT BE DETAINED IN CUSTODY UPON AUTHORITY OF THIS WARRANT AFTER 3-31-78." Apparently, it has been customary procedure for the Commission to measure the life of Youth Act warrants against the maximum expiration date of the sentence because parole violations generally do not cause a youth

offender's sentence to be interrupted.[5] Respondents' response at 17. Mr. Henrique claims that if abscondence tolled youth offender sentences prior to enactment of 28 C.F.R. § 2.10(c) there would have been no reason to stamp expiration dates on parole violator warrants because the warrant for any alleged parole violator who did not abscond easily could be executed within the six year period. Apart from the practice of placing expiration dates on parole violator warrants, petitioner points to the representations made to him by the Commission. Immediately after he was arrested the Commission adopted the position he owed approximately nine months on his sentence, calculating the period of his abscondence from the effective date of the amended regulation to the date of his arrest. Responding to his habeas petition, however, the government now takes the position Mr. Henrique owes almost two and one-half years based upon the full period of his abscondence from parole supervision. Although respondents do not attempt to explain these prior inconsistencies, petitioner has presented no evidence to the court to show the Commission followed a regular policy of giving youth offenders credit for time spent in absconder status prior to the enactment of 28 C.F.R. § 2.10(c).

Under the common law a prisoner has a right to serve his sentence continuously rather than in installments. *Albori v. United States*, 67 F.2d 4, 7 (9th Cir. 1933). However, a continuous sentence may be interrupted by some fault of the prisoner. 67 F.2d at 7.

> [C]ases exist which . . . recognize [the court's] power to interrupt the running of a criminal sentence, *e. g., Theriault v. Peek*, 406 F.2d 117 (5th Cir. 1968) (*per curiam*), *cert. denied,* 394 U.S. 1021, 89 S.Ct. 1644, 23 L.Ed.2d 47 (1969) (escape from prison interrupts sentence): *McDonald v. Lee*, 217 F.2d 619 (5th Cir. 1954), *vacated as moot*, 349 U.S. 948, 75

S.Ct. 893, 99 L.Ed. 1274 (1955) (second sentence for violation of conditions of military confinement interrupts running of first sentence): *Anderson v. Corall*, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247 (1923) (time between grant of parole and its revocation not credited toward underlying sentence). *In re Garmon*, 572 F.2d 1373, 1376 (9th Cir. 1978).

In this regard the Ninth Circuit also has noted that the federal escape statute, 18 U.S.C. § 752, sets a penalty for the offense without stating the effect of that penalty upon an ongoing criminal sentence. *In re Garmon*, 572 F.2d 1373, 1376 (9th Cir. 1978).

■ The court's equitable power to suspend the running of a sentence due to certain misconduct of the prisoner/parolee is necessary to provide rational application of the law. The Youth Act contains no tolling provision, however, as noted above, based on the recognition that a youth offender cannot benefit from correctional rehabilitation when he is not under any supervision, courts have interpreted the Act to exclude certain periods of time from the six year computation. *United States v. Marshall*, 532 F.2d 410 (5th Cir. 1976) (service of sentence for civil contempt); *Suggs v. Daggett*, 522 F.2d 396 (10th Cir. 1975) (escape); *Frye v. Moran*, 302 F.Supp. 1291 (D.C.Tex. 1969) (release on bail pending appeal). Each of these cases antedated the Commission's regulation and presumably provided the basis for its later adoption. The circumstances of this petition are unique because the Commission has anticipated the court's interpretation. Contrary to petitioner's intimation, it has never been the law that Youth Act sentences ran without interruption. Instead, factors which toll the running of youth offender sentences have been recognized as they have been presented to the courts. This court's ruling that petitioner's sentence was tolled for the period he absconded from parole supervision

---

5. Formerly, youth offenders received credit for time spent on parole prior to revocation whereas adult offenders did not. *Fish v. United States*, 254 F.Supp. 906, 906–07 (D.Md.1966); 62 Stat. 854. The 1976 Parole Commission and Reorganization Act, however, changed the law giving adult offenders the same credit. 18 U.S.C.A. § 4210(b) (Supp.1978); *Daniels v. Farkas*, 417 F.Supp. 793 (C.D.Cal.1976).

does not violate his constitutional right to be free from the imposition of ex post facto laws simply because the court's power to toll his sentence is inherent and does not derive from 28 C.F.R. § 2.10(c). Similarly, the court is not bound by prior actions or representations of the Parole Commission from which a contrary interpretation of the law might be inferred.

### Estoppel

Petitioner's second contention is that the Parole Commission is estopped to assert jurisdiction over him because of representations made to his former attorney by a high ranking official of the Parole Commission's Western Region office indicating that petitioner could not be arrested after March 31, 1978. The affidavits supplied to the court by the attorney and the official present differing views on the exact representations made. The official recalls a general conversation about the Commission's practices and procedures; the attorney remembers a specific discussion regarding the facts and circumstances of Mr. Henrique's case.

■ The well-established test for estoppel requires proof of the following factors. The party to be estopped must know the facts and must intend that his conduct be acted upon or so act that the party asserting the estoppel has a right to believe it is so intended; and the party asserting the estoppel must be ignorant of the true facts and must be injured by the estopped party's conduct. *United states v. Wharton*, 514 F.2d 406, 412 (9th Cir. 1975). Estoppel may be available as a defense against the government if the government's wrongful conduct threatens to work a serious injus-

tice and if the public interest is not unduly damaged by the imposition of estoppel. *United States v. Lazy FC Ranch*, 481 F.2d 985, 989 (9th Cir. 1973). Such is the case even if the government is acting in a sovereign capacity, although courts may be more reluctant to estop the government when it is acting in this capacity than when it is acting in a proprietary capacity. 481 F.2d at 989.

■ When these standards are applied to this case it becomes apparent there is no basis for estoppel. Assuming Mr. Henrique's version of the facts is correct,[6] namely that the Parole Commission official was fully informed of the facts and gave advice intending that it should be relied upon, Mr. Henrique still cannot establish the requisite injury. Had he known the Commission would attempt to assert jurisdiction over him after March 31, 1978, petitioner claims he would have turned himself in or taken steps to protect himself from being arrested and incarcerated. However, he does not show how his present circumstance is any different than it would have been had he surrendered voluntarily. Surely, Mr. Henrique cannot claim injurious reliance based on the fact he might have hidden himself to avoid arrest. Furthermore, the court does not perceive the compelling circumstances necessary to invoke estoppel against the government acting in its sovereign capacity. If the government's conduct was wrongful the only injustice it caused was to give Mr. Henrique a false sense of security for less than two months. The public interest would be damaged by application of estoppel where the wrong was of such minor significance.[7]

---

6. Clearly, if the Parole Commission official was not apprised of the fact petitioner had absconded from supervision, the commission was not foreclosed from changing its position once the true situation became known. *Klinkner v. Squier*, 144 F.2d 490, 491 (9th Cir. 1944).

7. In *Frye v. Moran*, 302 F.Supp. 1291 (W.D. Tex.1969) petitioner sought a writ of habeas corpus based upon a letter from the legal counsel of the Bureau of Prisons to the State Attorney General, a copy of which had been sent to petitioner in prison. The letter stated that his Youth Corrections Act sentence continued to

run while he was in state custody and gave a minimum expiration date. After release from state prison the petitioner was placed on federal parole which was subsequently revoked. The Bureau of Prisons changed its position on when his sentence began to run and refused to give him credit for time spent in state custody prior to the affirmance of his federal conviction. The court agreed with the government based upon its finding that Federal Rule of Criminal Procedure 38 operated to stay petitioner's sentence when he appealed his federal conviction and was released on bail several

### Arrest Warrant

Petitioner's final claim is that at the time of his arrest there was no outstanding warrant, only an expired warrant, and therefore the FBI agents did not have authority to take him into custody. On this point he is correct, and it is for this reason the petition must issue.

■ When a parolee is alleged to have violated his parole, the Commission is authorized to issue a warrant for his retaking. 18 U.S.C.A. § 4213(a)(2) (Supp.1978). The warrant may be executed by any officer of any Federal penal or correctional institution, or by any Federal officer authorized to serve criminal process within the United States. 18 U.S.C.A. § 4213(d) (Supp.1978). However, there is no statutory authority for the warrantless arrest of a suspected parole violator. This is so because federal law extends the power of FBI agents and United States Marshals to make warrantless arrests only to "any offense against the United States in their presence, or [to] any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony." 18 U.S.C. §§ 3052, 3053. A parole violation is neither a misdemeanor nor a felony although the conduct constituting the violation might be either one. *United States v. Hallman*, 365 F.2d 289, 291 (3rd Cir. 1966); *Hyser v. Reed*, 115 U.S. App.D.C. 254, 287, 318 F.2d 225, 258 (D.C. Cir.1963) (Fahy, J., concurring).

■ The government makes several arguments to support the validity of Mr. Henrique's arrest. First it argues the legal effect of the expiration language on the face of the original warrant was nullified when the petitioner absconded from parole supervision. By analogy, the court is directed to several cases which say an arrestee cannot complain of the delay in the execution of a warrant where the delay is caused by his own conduct. *Castillo v. United States*, 391 F.2d 710, 711 (2nd Cir.

1968); *Shelton v. United States Board of Parole*, 128 U.S.App.D.C. 311, 318, 388 F.2d 567, 574 (D.C.Cir.1967); *Rossello v. United States Board of Parole*, 261 F.Supp. 308, 310 (M.D.Pa.1966). While these cases are good authority for the principal they articulate, they do not support the government's argument that the clear language on the face of the warrant can be amended by the conduct of the arrestee. Of necessity, federal officers must rely on the warrant itself when making an arrest. They cannot be expected to act upon facts and circumstances not disclosed in the warrant; to do so would destroy the purpose of the warrant. The court agrees the Commission's jurisdiction was extended beyond March 31, 1978 due to petitioner's abscondence from parole supervision; it does not agree the life of the warrant was similarly extended.

■ The second theory advanced by the government is that the June 13th teletype, quoted above, amended the warrant and extended its life. An accompanying letter of instruction may have the same effect as language on the face of a warrant. *United States v. Cox*, 475 F.2d 837, 841 (9th Cir. 1973). However, the teletype authorizing the United States Marshal to assume custody of Mr. Henrique arrived eight hours *after* he was arrested. Therefore, it could not have revived the expired warrant at the time of petitioner's arrest. Moreover, the teletype stated a warrant and warrant application would follow; by its terms it did not purport to revive the old warrant. Recognizing these difficulties, the government theorizes that the FBI agents merely "detained" Mr. Henrique in the San Francisco City jail until the United States Marshal took custody under authority of the teletype. In support of this theory the government cites *United States v. Polito*, 583 F.2d 48 (2nd Cir. 1978).

In *Polito* the Second Circuit reviewed a somewhat similar situation. The Parole Commission had issued a warrant for the

months before he was taken into state custody. Although estoppel was not specifically raised as a defense the court did not even suggest the

Bureau of Prisons was barred from changing its position on petitioner's release date.

retaking of a youth offender. A local police officer who knew about the warrant apprehended the parolee and promptly turned him over to appropriate federal officials. The court held the federal statute authorizing federal officers to execute warrants issued by the Parole Commission did not prohibit local law enforcement officers from assisting in the retaking of a federal parolee for whom a warrant had been issued. 583 F.2d at 54. Addressing the constitutional question posed by the preliminary apprehension, the court held that the local officer's detention was not an "arrest" for Fourth Amendment purposes. 583 F.2d at 56. This holding was based upon "the unique status of parolees in our society and in our legal system, [and] the peculiar nature of apprehension of parolees under warrants for retaking." 583 F.2d at 56. However, the holding was strictly limited to temporary detentions "where a warrant for retaking a parolee has been issued by the Commission and remains outstanding, and where local law enforcement officers have probable cause to believe that an individual is the person being sought." 583 F.2d at 56. *Polito* provides a helpful analysis, but it differs materially from the case at hand because there was in existence a valid outstanding warrant for the parolee's arrest. In this case there was no valid outstanding warrant either when Mr. Henrique was arrested by the FBI agents or when he was turned over to the United States Marshal.[8]

The final argument raised by respondents is that the FBI agents did not violate petitioner's rights when they took him into custody without a warrant because the retaking of a parole violator is not an arrest within the meaning of the Fourth Amendment. This argument is predicated on the theory a parolee is in constructive custody while he serves a portion of his sentence outside the prison walls. Since the authorities who seek his retaking already have legal custody over him the apprehension to establish actual custody does not constitute an arrest.

For many years courts have struggled with the status of parolees and the constitutional rights to be afforded them. Long ago the Supreme Court described a parole violator as having a status and rights analogous to an escaped convict. *Anderson v. Corall,* 263 U.S. 193, 196, 44 S.Ct. 43, 68 L.Ed. 247 (1923). More recently the Court has described parole as "an integral part of the penological system," *Morrissey v. Brewer,* 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972), and has observed that the "liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss.' " 408 U.S. at 482, 92 S.Ct. at 2601. All the same, a parolee does not enjoy "the absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions." 408 U.S. at 480, 92 S.Ct. at 2600. In the *Polito* case discussed above the Second Circuit concluded "parolees are neither totally stripped nor fully vested with constitutional protections. They are different from other citi-

---

**8.** The court is admittedly puzzled by the factual scenario in this case. The arrest of Mr. Henrique shortly after his attorney had contacted the Parole Commission appears to have been entirely coincidental. When the United States Marshal's office notified the Commission it was unable to locate petitioner in March of 1976 the Commission requested the assistance of the FBI. The agent who arrested petitioner filed a declaration stating the San Francisco office of the Bureau had been notified in May of 1978, two years later, by its Sacramento office that Mr. Henrique, "a parole violator and a federal fugitive" was in the area. Presumably if the Commission had reassessed Mr. Henrique's case, determining that he still owed more time, and renewed the request for FBI assistance, the

government would have brought this to the court's attention to show the Commission had revived the expired warrant *before* petitioner was arrested.

The record also does not disclose whether a warrant check was run before or after Mr. Henrique was apprehended. If the agents knew the warrant was expired when they took petitioner into custody the constitutional violation would appear more egregious although, conversely, the officer's good faith could not cure a bad arrest. *United States v. Cox,* 475 F.2d 837, 840 (9th Cir. 1973) ("Thus in good faith officers can search without a warrant a wrong man incident to a warrantless arrest, yet in good faith officers cannot arrest the right man if the warrant be invalid.").

zens and they may, in certain circumstances, possess fewer constitutional rights." 583 F.2d at 54.

■ The lesser constitutional protection afforded parolees evidences itself almost exclusively in the relationship between the parolee and his parole officer, who has a special and unique interest in invading his privacy and curtailing certain of his activities. *Latta v. Fitzharris,* 521 F.2d 246, 249 (9th Cir. 1975) (en banc). Indeed, in his dealings with law enforcement personnel other than the parole authorities, a parolee may enjoy the same constitutional rights as wholly free citizens. 521 F.2d at 254 (Hufstedler, J., dissenting). However, a parolee is not deprived of all constitutional protections even in his dealings with his parole officer. Addressing the problem of warrantless searches initiated by parole officers the Ninth Circuit has explained:

> [T]he theory upon which courts have usually relied to justify stripping parolees of Fourth Amendment protection has been widely criticized. Commentators have repeatedly criticized the notion that the status of parolees is legally comparable to that of prisoners in actual custody as being logically inconsistent and ignoring reality. . . . In holding that parolees are entitled to minimum due process type hearings before their parole may be revoked, the Supreme Court has specifically rejected the theory that parole officers have unfettered discretion in dealing with parolees, and refused to attach so broad a significance to the "custody" theory. . . .
>
> It is thus too late in the day to assert that searches of parolees by their parole officers present no Fourth Amendment issues. Rather, such searches may be held illegal and the evidence obtained therefrom suppressed unless they pass muster under the Fourth Amendment test of reasonableness. 521 F.2d at 248–49 (citations omitted).

For the proposition that the retaking of a parolee does not constitute an arrest within the meaning of the Fourth Amendment the government relies on several cases decided when the custody theory was widely approved. In *Jarman v. United States,* 92 F.2d 309, 311 (4th Cir. 1937) the Fourth Circuit observed that a parole warrant is not "a warrant for the arrest of one to be charged with and tried for a crime, nor for search and seizure of property as contemplated in the Fourth Amendment to the Constitution." Furthermore, the court wrote, "[s]ince [petitioner] was not to be tried upon any charge contained in the warrant for his arrest, the issuance of the warrant was only for two purposes, first to restore him to actual custody and, second, to advise him of the purpose of his reincarceration within the walls of the penitentiary." 92 F.2d at 311. This analysis was followed by the District of Columbia Circuit when a habeas petitioner charged that his arrest warrant, issued by the United States Board of Parole, violated the Fourth, Fifth and Sixth Amendments to the Constitution because it was not under oath, was not issued upon probable cause, and did not acquaint him with the nature of the offense committed. The court responded as follows:

> Appellant completely misconstrues the nature and purpose of the laws governing parole and conditional releases. A warrant issued for the retaking of a person under these laws proceeds upon an entirely different premise and serves a different purpose than in the case of a warrant for the arrest of a person charged with the commission of a crime. A released prisoner is not a free man. Prior to the expiration of his maximum term he is a ward of the Parole Board, subject to its control and care. The Supreme Court has characterized the violation of a condition of parole as being, in legal effect, on the same plane as an escape from the custody of the warden. "His status and rights are analogous to those of an escaped convict." . . . Consequently, it cannot be said that the retaking of a prisoner who is already within the legal custody of the authorities constitutes an arrest within the meaning of the constitutional provisions. *Story v. Rives,* 68 App.D.C. 325, 331, 97 F.2d 182, 188, *cert.*

*denied,* 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377 (1938) (citations omitted).

The government also relies upon later cases which have cited *Jarman* and *Story* with approval. *Hyser v. Reed,* 115 U.S.App.D.C. 254, 272 n. 15, 273, 318 F.2d 225, 243 N. 15, 244 (D.C.Cir.1963); *United States ex rel. Nicholson v. Dillard,* 102 F.2d 94, 96 (4th Cir. 1939); *United States ex rel. Randazzo v. Follette,* 282 F.Supp. 10, 14, 15 (S.D.N.Y. 1968), *aff'd* 418 F.2d 1319 (2nd Cir. 1969), *cert. denied,* 402 U.S. 984, 91 S.Ct. 1672, 29 L.Ed.2d 150 (1971). Although the language of the cases is expansive it is worth noting none of the decisions cited by the government involved the warrantless arrest of an alleged parole violator.

There is a logical reason to distinguish between the retaking of a parolee and the apprehension of one to be charged with a crime. The parole revocation procedure is not part of a criminal prosecution, and a parolee may be arrested and reincarcerated for reasons that would not permit the arrest or incarceration of other persons. Therefore, it is reasonable to assume an administrative warrant issued for the retaking of a parolee should not be judged by exacting Fourth Amendment standards. Paraphrasing the Ninth Circuit, however, it is too late in the day to assert that the arrest of an alleged parole violator presents no Fourth Amendment issues.

 Congress enacted a comprehensive scheme for the granting and revocation of parole grounded on concepts of basic fairness. Within this statutory framework the Parole Commission is given exclusive authority to decide whether an alleged parole violator should be *summoned* to appear at a parole revocation hearing or *retaken* on a parole violator warrant. 18 U.S.C.A. § 4213(a) (Supp.1978). Regulations enacted under the statute further provide that a warrant may issue only on "satisfactory evidence" of a parole violation and such warrant "may be issued or withdrawn *only* by the Commission or a member thereof."

28 C.F.R. § 2.44(a) (1978) (emphasis added). When the warrant is executed the regulations direct the arresting officer to give the parolee a written statement of the charges against him, his procedural rights under the Commission's regulations, and the possible actions which may be taken by the Commission. 28 C.F.R. § 2.44(e) (1978). Whether the retaking of a parolee is styled a Fourth Amendment arrest or not, this scheme bears a striking resemblance to the process by which a criminal arrest warrant is issued and executed.

This statutory scheme, which assures parolees certain procedural safeguards, is not susceptible of the interpretation that law enforcement officials outside of the Parole Commission are independently vested with authority to determine probable parole violations and the necessity for retaking. Accordingly, when law enforcement officers make a warrantless arrest of an alleged parole violator they act outside the statutory scheme and their conduct must be judged by the same standards which govern the arrest of wholly free citizens. Mr. Henrique was taken into custody and restrained of his liberty by FBI agents who had no valid warrant for his arrest and no other authority to hold him. The Parole Commission still has not issued a new warrant or amended the expired one. In these circumstances the court cannot say petitioner did not suffer a Fourth Amendment arrest simply because he is a parolee.[9]

The Parole Commission retains jurisdiction over Mr. Henrique for the period he absconded from parole supervision, and it is within the prerogative of the Commission to initiate proceedings to revoke his parole. However, the Commission must observe the terms of the statute and proceed by subpoena or valid arrest warrant. At the present time Mr. Henrique is held in violation of the Constitution and federal law. Accordingly, his petition for a writ of habeas corpus must be, and it is, hereby GRANTED.

---

**9.** The parties have analyzed the problem in Fourth Amendment terms as a warrantless arrest although it might also be viewed in Fifth Amendment terms as a procedural due process problem because the statutory procedures for retaking by a warrant were not followed.