**John Riley HENRIQUE,**
**Petitioner-Appellant,**

v.

**UNITED STATES MARSHAL and**
**United States Parole Commission,**
**Respondents-Appellees.**

**No. 80–4236.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1981.

Decided Aug. 17, 1981.

As Amended on Denial of Rehearing
and Rehearing En Banc
Nov. 18, 1981.

Charles R. Garry, Garry, Dreyfus, McTernan, Brotsky, Stender, Herndon & Walsh, San Francisco, Cal., for petitioner-appellant.

Cedric Chao, Asst. U. S. Atty., San Francisco, Cal., for respondents-appellees.

Before MERRILL and CHOY, Circuit Judges, and HEMPHILL,* Senior District Judge.

CHOY, Circuit Judge:

Appellant Henrique appeals from a denial of his petition for a writ of habeas corpus. Henrique, who absconded from parole supervision during the running of his six-year Youth Corrections Act sentence, argues that the jurisdiction of the United States Parole Commission (Commission) expired at the end of the six-year term and that it thereafter had no authority to rearrest him. We reject that argument and affirm the district court's judgment denying the petition.

I. *Facts*

On April 3, 1972, appellant Henrique was sentenced as a youth offender [1] for posses-

sion of a controlled substance with intent to distribute. He was incarcerated at the Lompoc Federal Correctional Institution until August 31, 1973 when he was released subject to parole supervision for the duration of the six-year maximum sentence authorized by 18 U.S.C. § 5017(c).[2]

Henrique performed adequately under parole until August 1975, when he was arrested and charged with contributing to the delinquency of a minor. The delinquency charge was later dropped, but Henrique pleaded guilty to a charge of giving a false name to the arresting officers. On October 24, 1975, Henrique's parole officer, Thomas Mortensen, notified the regional parole board that Henrique had violated several conditions of his parole. A warrant application for Henrique's arrest was filed, listing four bases for revoking his parole: (1) giving a false name to an arresting officer; (2) failing to report to a probation officer; (3) leaving the district without permission; and (4) associating with a person having a criminal record. On December 10, 1975, the regional parole board issued a warrant for Henrique's arrest stamped with an expiration date coinciding with the sentence expiration date of March 31, 1978.

Mortensen informed Henrique on December 18, 1975 that the parole board had issued a warrant for his arrest and that a United States marshal would pick him up at his home the next day to return him to prison. Henrique was not at his home when a marshal and Mortensen attempted to contact him on December 19, 1975. On March 4, 1976, the United States Marshal's office reported to the regional

---

* The Honorable Robert W. Hemphill, Senior United States District Judge for the District of South Carolina, sitting by designation.

1. 18 U.S.C. § 5010(b) provides:
 If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged

by the Commission as provided in section 5017(c) of this chapter . . . .

2. 18 U.S.C. § 5017(c) provides:
 A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction.

parole board that it had been unable to locate Hènrique. His status as an absconder was confirmed by a parole report dated May 14, 1976.

The 1975 arrest warrant was not executed until June 13, 1978, when Henrique was arrested by FBI agents as he arrived at San Francisco Municipal Court for a preliminary hearing on a state controlled-substances charge. The Commission prepared a supplemental warrant application, adding to the pre-existing grounds for parole revocation the charge that Henrique had failed to report a change in residence to his parole officer. The Commissioner did not, however, issue a new warrant. Henrique filed a petition for a writ of habeas corpus on June 16, 1978, arguing, *inter alia* : (1) that the Commission lacked jurisdiction over him because the original six-year sentence period had expired on the previous March 31st; and (2) that he was in custody pursuant to an invalid warrant which had, by its own terms, expired on the previous March 31st.

Judge Spencer Williams granted the petition on June 26, 1979 on the narrow ground that the warrant had expired and that the ensuing arrest was therefore unlawful. *Henrique v. United States Marshal*, 476 F.Supp. 618, 626, 629 (N.D.Cal.1979). (*Henrique I.*) At the same time, he specifically rejected Henrique's other arguments, finding, *inter alia*, that the running of the maximum sentence under 18 U.S.C. § 5017(c) was tolled during the period of Henrique's abscondence, 476 F.Supp. at 623–25, and that the Commission retained jurisdiction

over him so that it could bring parole revocation proceedings pursuant to a valid warrant. *Id.* at 629. Accordingly, the Commission issued a new parole-violator warrant on September 27, 1979 and Henrique was rearrested. Henrique's second petition for habeas corpus, based upon the alleged untimeliness of the second warrant as well as the arguments previously rejected by Judge Williams, was denied by Judge Peckham without opinion on May 7, 1980. (*Henrique II.*) It is from that order that Henrique appeals.[3]

## II. Discussion

### A. Tolling Absconders' Sentences

 The Youth Corrections Act (YCA) provides that any youth offender committed pursuant to the Act "shall be discharged unconditionally on or before six years from the date of his conviction."[4] 18 U.S.C. § 5017(c). Henrique argues that the Commission's jurisdiction over him ceased when the six-year period expired. The Government responds that courts have interpreted the statute so as best to effectuate the goals of the YCA and that those goals are best served by denying a youth offender sentence credit for time spent eluding parole supervision.

A current Commission regulation addresses the issue directly:

Service of the sentence of a committed youth offender ... commences to run from the date of conviction and is interrupted only when such prisoner or parolee

3. Judge Peckham's order stated simply that:
 We consider this matter anew although the basic facts and legal issues underlying this case have been previously adjudicated by Judge Williams in *Henrique v. United States Marshal*, 476 F.Supp. 618 (N.D.Cal.1979).
 The present petition for a writ of habeas corpus having been submitted to the court for consideration upon oral argument, and the record and pleadings on file,
 It is hereby decided that the petition is denied and the action is dismissed.
 Judge Williams' opinion therefore does not technically constitute the opinion below. His adjudication of the tolling question, however,

was not dicta, as Henrique claims, as it authorized the Government to re-arrest Henrique under a new warrant. Although Judge Peckham did not expressly adopt Judge Williams' findings, we will refer to Judge Williams' opinion as persuasive in the absence of elaboration by Judge Peckham.

4. The provision is stated in mandatory terms. The adverb "unconditionally," however, refers to the *nature* of discharge (as opposed to the "conditional" release of parole) and not the *fact* of discharge. *See* text of statute at note 2, *supra.*

(1) is on bail pending appeal; (2) is in escape status; (3) *has absconded from parole supervision* ; or (4) [has been imprisoned for civil contempt].

28 C.F.R. § 2.10(c) (emphasis added). The regulation was not in effect at the time Henrique absconded, however, and the Government does not argue that it should apply here.[5] The crucial issue is whether that part of the regulation dealing with abscondence represented a change from the pre-existing law, as Henrique argues, or merely codified the law, as the Government maintains. The legislative history of the YCA is silent on the issue.[6] Henrique argues that statutory construction and Commission practices support his interpretation. The Government argues that policy and analogous precedent should control.

In *Ogg v. Klein*, 572 F.2d 1379 (9th Cir. 1978), this court considered the closely analogous issue whether a youth offender's escape from custody should toll the running of the six-year sentence. The case interpreted the same statute, and involved many of the same considerations as those involved here. The prisoner, Ogg, had walked away from a youth facility without permission. At the time of the escape, the Commission had not adopted the regulation specifying that escapees' sentences would be interrupted. *See* 28 C.F.R. § 2.10(c)(2). Like Henrique, Ogg argued that the statute's text implied that discharge in six years was mandatory. Ogg also argued that, according to principles of statutory construction, the adoption of the regulation expressly providing for tolling of escapees' sentences implicitly recognized that sentences were not tolled prior to the regulation's promulgation. This court disagreed, finding that the regulation had merely restated pre-existing law providing for tolling of an escapee's sentence. 572 F.2d at 1383. In so ruling, this court referred approvingly to other courts which had reached similar conclusions, quoting at length from Judge Gerhard Gesell's opinion in *Hartwell v. Jackson*, 403 F.Supp. 1229 (D.D.C.1975), *aff'd mem.*, 546 F.2d 1042 (D.C.Cir.1976). After noting the general rule that escape tolls the running of an adult sentence, Judge Gesell had reasoned:

Against this background, it is unrealistic to suggest that Congress intended to repeal this general rule by implication. While much can be said for assuming that Congress meant unequivocally what it said, it is unwarranted to stretch an inflexible interpretation beyond the realm of reason. Can the Court realistically assume that Congress believed youthful offenders were being rehabilitated while in escape status and that the beneficent purposes of the Youth Corrections Act were being accomplished while an offender lived without supervision in violation of his commitment? Surely not. Reason, justice and tradition strongly suggest that the Court must recognize the common-sense practicalities of the situation presented and refuse to be compelled into an absurd and unforeseen result by procrustean rules of statutory interpretation. No one can sensibly conclude that Congress, without a word in the legislative history, intended the novel and illogical result that youthful offenders who escaped from custody would still receive credit for serving a sentence they did not serve.

403 F.Supp. at 1230. *Quoted in Ogg v. Klein*, 572 F.2d at 1382. Other courts have carved exceptions to the six-year maximum sentence where policy has so warranted: escape (*Suggs v. Daggett*, 522 F.2d 396, 397

---

5. 28 C.F.R. § 2.10(c)(3), dealing with abscondence, became effective on September 30, 1977, almost two years after Henrique absconded. This court has held that regulations promulgated pursuant to the 1976 Parole Commission and Reorganization Act cannot be applied retroactively. *De Peralta v. Garrison*, 575 F.2d 749 (9th Cir. 1978); *White v. Warden*, 566 F.2d 57 (9th Cir. 1977); *but see Rifai v. United States Parole Commission*, 586 F.2d 695 (9th Cir. 1978).

6. *See Ogg v. Klein*, 572 F.2d 1379, 1380 n.2 (9th Cir. 1978); *Hartwell v. Jackson*, 403 F.Supp. 1229, 1230 (D.D.C.1975), *aff'd mem.*, 546 F.2d 1042 (D.C.Cir.1976).

(10th Cir. 1975)); offender free on appeal bond (*Frye v. Moran*, 302 F.Supp. 1291 (W.D.Tex.), *aff'd per curiam*, 417 F.2d 315 (5th Cir. 1969)); intervening imprisonment for civil contempt (*United States v. Marshall*, 532 F.2d 410 (5th Cir. 1976)).

Henrique seeks to distinguish the legal status of escape from that of abscondence on the grounds of statutory construction and practice. He notes that the 1976 regulation dealing with escape, 28 C.F.R. § 2.10(b), also tolled the running of the sentence for offenders on bail pending appeal, but did not mention abscondence. Abscondence was added as a ground for interrupting the running of the sentence when the regulation was amended in 1977. Henrique therefore argues that principles of statutory construction suggest that the omission of abscondence from the initial incarnation of the regulation constituted an intentional exclusion. That argument, plausible in the abstract, is overborne by the more persuasive inference that the initial regulation merely embodied exceptions which had already been judicially recognized, whereas the case of abscondence had not yet been litigated. *See Henrique I*, 476 F.Supp. at 624. The discrepant timing of the regulatory provisions dealing with absconding is better explained by this absence of litigation than by any substantive distinction between escape and abscondence.

Henrique also argues that statements by agents of the Commission and Commission practices establish that absconding did not toll absconders' sentences prior to passage of the regulation. He adduces statements made by Commission employees to his attorney,[7] comments by the Chairman of the Commission in the Federal Register,[8] inconsistent litigative stances on the part of the Commission,[9] and the Commission's practice of stamping parole violation warrants with an expiration date coinciding with the expiration of the six-year term.[10] Judge Williams acknowledged in *Henrique I* that this evidence suggested that the Commission's interpretation of the law had changed. 476 F.Supp. at 623. At the least it indicates that the Commission's approach to absconders had been inconsistent. Judge Williams also found, however, that the evidence did not establish a regular Commission policy of according absconders credit for time spent in absconder status. *Id.* at 624. He also rejected Henrique's argument that the employees' representations estopped the Government from tolling the sentence, an argument which Henrique does not raise on this appeal. *See id.* at 625.

A formal agency interpretation of the statutes it administers is worthy of considerable deference from the courts. *See, e. g., Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d

---

7. Henrique's counsel, Louis Katz, alleges that in April 1978 he contacted Sydney Sonnabaum, Chief United States Probation Officer for the Federal Probation Office in San Diego, and A. Ronald Peterson, Post-Release Analyst for the United States Parole Commission, Western Region, and was independently assured by both men that only escape tolled the running of a youth offender sentence. Sonnabaum confirms that it was his impression at the time that absconding did not toll the running of a sentence. Peterson does not deny Katz's recollection of their conversation, but states that he was speaking informally and later advised Katz that absconding indeed tolled the running of the sentence.

8. At the time that the regulation dealing with absconding was adopted, the Chairman stated:

The Commission also adopts with change its proposed rule at § 2.10(c), by which absconders from parole supervision under the Youth Corrections Act will not be given credit for

time spent in absconder status. *This change will result in like treatment for persons in absconder as well as escape status, and equates absconding with escape.* Only one comment was received specifically referring to this change, in which a U.S. Probation Officer agreed that a Youth Act parolee should not escape apprehension for parole violations solely because he eludes law enforcement officers beyond the expiration date of his sentence.

42 Fed.Reg. 12044 (1977) (emphasis added).

9. The Commission initially calculated the time Henrique owed to complete his sentence from the date that the absconding regulation became effective, and later claimed that the sentence was tolled as of the time of actual abscondence. *See Henrique I*, 476 F.Supp. at 624.

10. *See* 476 F.Supp. at 621.

337 (1978). The evidence of inconsistency which Henrique presents here, however, does not amount to a coherent agency interpretation and in any case is here outweighed by the force of precedent, common sense, and the policies underlying the YCA. As Judge Williams noted,

> If this court were to hold that abscondence from parole supervision did not toll the running of a Youth Act sentence it would be a clear invitation to all youth offenders who anticipated a revocation of their parole to elect to "serve" the remainder of their six year sentence underground rather than in prison. It would also encourage parolees who disliked the constraints placed upon them by their probation officers to enjoy unrestricted freedom in hiding. Surely Congress did not intend to make the beneficent purpose of the Act so easily evaded.

476 F.Supp. at 623. *See also Hartwell v. Jackson*, 403 F.Supp. at 1230; *Suggs v. Daggett*, 522 F.2d at 397.

We hold that the running of the six-year maximum sentence under 18 U.S.C. § 5017(c) is tolled when a youthful offender absconds from parole.

### B. *When Tolling Begins*

Henrique's abscondence did not cause the Commission to add to the charges against him until September 27, 1979, when a charge of "failing to report a residence change" was added to the existing parole violation charges. Henrique argues that a formal charge is necessary to toll a sentence (conceding *arguendo* that tolling operates at all), and that the running of his sentence therefore was not tolled before it expired on March 31, 1978, simultaneously causing the Commission's jurisdiction to expire.

The Government responds that it is the *act* of absconding that tolls the statute, and not the filing of charges. This court has held, in a case involving an adult statute of limitation, that tolling begins "whenever the suspect flees with the intent of avoiding prosecution, even if prosecution has not actually begun at the time of the flight." *United States v. Ballesteros-Cordova*, 586 F.2d 1321, 1323 (9th Cir. 1978). In older cases involving adult minimum sentences, this court similarly has looked to the misbehavior of the parolee, and not the actions of officials, in determining when the running of a sentence is tolled. *Schiffman v. Wilkinson*, 216 F.2d 589, 591 (9th Cir. 1954); *Klinkner v. Squier*, 144 F.2d 490, 491 (9th Cir. 1944).

The Government argues, in addition, that the Commission's mechanism for dealing with absconders does not contemplate a formal charge for absconding. Absconding is not *per se* a basis for revocation of parole; the nearest equivalent is the "failure to report a change of address" with which Henrique was eventually charged. Because absconding and parole violations are offenses of different sorts, carrying different penalties, the Government argues that it would make no sense to require a parole violation charge to initiate the tolling effect. We agree. Henrique's sentence was tolled as of the time he entered absconder status, and the Commission retained jurisdiction over him after the running of the original six-year term. The district court's judgment is AFFIRMED.