**Robert OGG, Petitioner-Appellant,**

v.

**Frank X. KLEIN, United States Marshal, Northern District of California, Respondent-Appellee.**

No. 77–2039.

United States Court of Appeals, Ninth Circuit.

April 11, 1978.

Marcus S. Topel, San Francisco, Cal., for petitioner-appellant.

Robert R. Ward, San Francisco, Cal., for respondent-appellee.

Before CARTER, Senior Circuit Judge, HUG, Circuit Judge, and HAUK, District Judge.*

HAUK, District Judge:

## I. Nature of Appeal

This case presents an appeal from an order of the United States District Court for the Northern District of California (Hon. Spencer Williams, J.) denying petitioner-appellant Ogg's petition for a writ of habeas corpus. The case involves an apparent question of first impression within the Ninth Circuit.

## II. Facts

On June 7, 1971, Ogg was convicted of importing hashish in the United States District Court for the Southern District of New York. The Court sentenced Ogg as a youth offender under provisions of the Youth Corrections Act, 18 U.S.C. § 5010(b). Ogg was then sent to the Robert F. Kennedy Youth Facility in Morgantown, West Virginia to serve his sentence. On August 21, 1971, however, Ogg walked away from the facility without permission. The government filed an escape charge, 18 U.S.C. § 751(a), in the Northern District of West Virginia and a warrant was issued on that charge.

Ogg remained on escape status for nearly five years. On June 17, 1976, after consulting with counsel, he surrendered himself in the United States District Court for the Northern District of California. At that time, United States Magistrate Richard Goldsmith released Ogg on his own recognizance pending an appearance set for July 16, 1976, to initiate rule 20 proceedings on the escape charge.

Notwithstanding Ogg's own recognizance release, the United States Marshal's Office immediately took custody of Ogg under directions from the United States Bureau of Prisons. The Bureau of Prisons stated that

* Hon. A. Andrew Hauk, United States District Judge for the Central District of California, sitting by designation.

Ogg's escape had tolled his Youth Corrections Act sentence and that he had yet to serve the remainder of that sentence.

On June 18, 1976, Ogg filed the instant habeas corpus action, 28 U.S.C. § 2255, requesting release on his own recognizance pending resolution of the rule 20 escape charge. He argued that, under the Youth Corrections Act provision governing his sentence, 18 U.S.C. § 5017(c), he must be released conditionally after "the expiration of four years from the date of his conviction" and that those four years had passed from the date of his conviction, June 7, 1971.

Ogg then pleaded guilty to the rule 20 escape charge. On August 19, 1976, the Hon. Robert H. Schnacke entered a judgment and commitment order sentencing Ogg to eight months imprisonment on the escape charge and further ordered that that sentence run concurrently with any other sentence theretofore imposed. Ogg began serving this sentence on September 7, 1976, and has served the eight-month term in full, but remains in custody on his original Youth Corrections Act sentence. He has continued to pursue his habeas corpus action.

On November 19, 1976, the Hon. Spencer Williams ordered Norman A. Carlson, Director of the Bureau of Prisons, and E. O. Toft, Regional Director, Western Region, Bureau of Prisons, be made party respondents to Ogg's habeas corpus action. The government opposed the petition. On January 25, 1977, Judge Williams denied Ogg's petition for habeas corpus relief. Ogg, who is in custody at Terminal Island, filed a timely appeal from Judge Williams' order. This Court has jurisdiction. 28 U.S.C. § 2253.

III. Issues on Appeal

In deciding whether the district court erred in denying Ogg's petition for habeas

corpus relief, two questions are presented on appeal:

(1) Does the escape of a youth offender toll a Youth Corrections Act sentence imposed under 18 U.S.C. § 5017(c)?

(2) Would application of a Bureau of Prisons regulation added in 1976, 28 C.F.R. § 2.10(b), to Ogg violate the constitutional prohibition against ex post facto laws?

IV. Discussion

A. Tolling of the Youth Corrections Act Sentence By the Youth Offender's Escape

Ogg's primary contention is that the sentencing provisions of the Youth Corrections Act contain language mandating that a youth offender must be released conditionally after the expiration of four years from the date of his conviction, 18 U.S.C. § 5017(c), that the Act does not contain any tolling provisions, and that, therefore, his escape did not toll the four-year maximum period of incarceration set out in 18 U.S.C. § 5017(c).

The sentencing provisions of the Youth Corrections Act under which Ogg was sentenced, 18 U.S.C. § 5010(b),[1] provides that the district court must sentence youth offenders in accordance with the requirements of 18 U.S.C. § 5017(c). Section 5017(c) provides:

A youth offender committed under Section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction.

Ogg argues that this unequivocal, mandatory language, especially in the absence of any legislative intent to the contrary,[2] con-

---

1. "If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pur-

suant to this chapter until discharged by the Commission as provided in section 5017(c) of this chapter."

2. While the Supreme Court has termed the Youth Corrections Act "the most comprehensive federal statute concerned with sentencing," *United States v. Dorszynski*, 418 U.S. 424,

trols and demonstrates that he should be released. Ogg further argues that the passage of a regulation in 1976 which expressly provides that escape does toll a Youth Corrections Act sentence, 28 C.F.R. § 2.10(b), implicitly recognizes that escape did not toll the sentence prior to the enactment of the regulation.

The government, on the other hand, argues that § 5017(c) assumes, in the light of the language of § 5010(b) permitting the Court to sentence a youth offender "to the custody of the Attorney General" until discharged in accordance with § 5017(c), that the youth offender be released *from* "the custody of the Attorney General" within the specified period. The government also analogizes youth offenders to adult prisoners, for whom escape does toll sentences. *See Anderson v. Corall,* 263 U.S. 193, 196, 44 S.Ct. 43, 68 L.Ed. 247 (1923). *See also United States v. Liddy,* 166 U.S.App.D.C. 289, 510 F.2d 669, 674 (1974) (en banc), *cert. denied,* 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975).

This Circuit has apparently never faced this precise issue. Both parties argue that *Cherry v. United States,* 299 F.2d 325 (9th Cir. 1962), supports their respective contentions but *Cherry* does not support either party. In *Cherry,* a trial court had initially placed a youth offender on five years probation but later revoked the probationary order and sentenced the youth offender to the custody of the Attorney General under 18 U.S.C. § 5010(b) until discharged pursuant to § 5017(c). The appellant in *Cherry* argued that the maximum sentence provisions of § 5017(c) should begin to run from the date of his initial conviction rather than from the date of his probation revocation. The Court declined to rule on this point, finding that the earlier of the two dates involved (*i. e.,* four years from the date of his initial conviction) had not yet arrived and holding that therefore the appellant lacked standing to raise the point. 299 F.2d at 326. Thus, under *Cherry* appellant Ogg

might have standing to raise the issue. The Court in *Cherry* did not, however, decide the issue before it; hence, the *Cherry* decision does not support either party here.

Two other recent cases have decided this precise issue, however. Both resolved the issue, as both parties point out in their briefs,[3] adversely to appellant Ogg. *Suggs v. Daggett,* 522 F.2d 396 (10th Cir. 1975); *Hartwell v. Jackson,* 403 F.Supp. 1229 (D.D.C.1975), *aff'd mem.,* 178 U.S.App.D.C. 276, 546 F.2d 1042 (1976). *Cf. United States v. Marshall,* 532 F.2d 410 (5th Cir. 1976) (incarceration arising from contempt need not be credited toward the time to be served under a Youth Corrections Act sentence).

In *Suggs v. Daggett,* the Court of Appeals for the Tenth Circuit, reversing a district court order granting a habeas corpus petition, held that § 5017(c)

> assume[s] that during the period in question the inmate either was in actual custody or in constructive custody, on parole; it does not contemplate that a prisoner can escape after sentence and remain in that status for either a short or long period of time and include the escape period in computing whether six years have gone by and the sentence thereby served.

522 F.2d at 397. The Court in *Suggs* went on further to state:

> To rule that escape time counts would be to disregard the object and spirit of the Youth Corrections Act which contemplates commitment for treatment looking to rehabilitation. It would be a mockery, therefore, to allow the escapee to employ time spent in an escape status in tabulating the six-year period of treatment looking to rehabilitation.

*Id.*

Similarly, in *Hartwell v. Jackson,* Judge Gesell, after reviewing the statutes involved, the absence of any legislative history, and the possible analogy to adult sentences, stated that:

---

432, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974), the legislative history surrounding § 5017(c) is silent with respect to the problem presented in this case. *See Hartwell v. Jackson,* 403

F.Supp. 1229, 1230 (D.D.C.1975), *aff'd mem.,* 178 U.S.App.D.C. 276, 546 F.2d 1042 (1976).

**3.** Appellant's Opening Brief at 6; Appellee's Brief at 4.

it is unrealistic to suggest that Congress intended to repeal this general rule [that escape tolls a ·sentence] by implication. While much can be said for assuming that Congress meant unequivocally what it said, it is unwarranted to stretch an inflexible interpretation beyond the realm of reason. Can the Court realistically assume the Congress believed youthful offenders were being rehabilitated while in escape status and that the beneficent purposes of the Youth Corrections Act were being accomplished while an offender lived without supervision in violation of his commitment? Surely not. Reason, justice ·and tradition strongly suggest that the Court must recognize the commonsense practicalities of the situation presented and refuse to be compelled into an absurd and unforeseen result by procrustean rules of statutory interpretation. No one can sensibly conclude that Congress, without a word in the legislative history, intended a novel and illogical result that youthful offenders who escaped from custody would still receive credit for serving a sentence they did not serve.

403 F.Supp. at 1230–31.

While appellant contends that these two decisions are "less than convincing," [4] he is unable to offer any arguments rebutting the arguments made in those decisions and can only repeat his position that the mandatory, unequivocal language of the statute compels the desired result. The government, of course, contends that these decisions are "well-reasoned." [5] In the District

Court, Judge Williams agreed with and relied upon those decisions, stating that to hold otherwise would be "unrealistic" and "absurd." [6] This position is correct. The *Suggs* and *Hartwell* cases make abundantly clear that escape does and should toll a youth offender's sentence. This Court agrees with those decisions and the reasoning behind them and therefore affirms the district court's order denying Ogg's petition for habeas corpus relief.

B. Application of 28 C.F.R. § 2.10(b) to appellant Ogg as a violation of the ex post facto clause

In 1976, the Bureau of Prisons added a regulation to cover expressly the situation presented by this appeal.[7] This regulation, then found at 28 C.F.R. § 2.10(b), provided:

Service of the sentence of a committed youth offender . . . commences to run and continues to run uninterruptedly from the date of conviction, except when such offender is on bail pending appeal or is in escape status.[8]

Ogg argues that application of this regulation to him violates the ex post facto clause of the Constitution, U.S.Const. Art. I, § 9, cl. 3.[9] Specifically, Ogg argues that prior law did not provide for tolling of a Youth Corrections Act sentence and that, citing *Love v. Fitzharris*, 460 F.2d 382 (9th Cir. 1972) (per curiam), *vacated and remanded with directions to dismiss as moot*, 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973) (but cited in *Warden v. Marrerro*, 417 U.S. 653, 663, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974)), changes in administrative interpre-

---

**4.** Appellant's Opening Brief at 6.

**5.** Appellee's Brief at 4.

**6.** Order Denying Petition for Habeas Corpus Relief at 2, 3 (January 25, 1977).

**7.** Despite numerous assertions in this matter by the appellant that the regulation became effective in 1974, *e. g.,* Appellant's Opening Brief at 5 n. 2, 7, this regulation became effective in 1976. *See* 41 Fed.Reg. 19326 (1976).

**8.** It should be noted that this 1976 regulation, enacted by·41 Fed.Reg. 19327 on May 12, 1976, was later amended by 42 Fed.Reg. 12045 on March 2, 1977, and now is codified as 28 C.F.R. § 2.10(c), effective August 1, 1977, reading as follows:

"(c) Service of the sentence of a committed youth offender or a person committed under the Narcotic Addict Rehabilitation Act commences to run from the date of conviction and is interrupted only when such prisoner or parolee (1) is on bail pending appeal; (2) is in escape status; (3) has absconded from his or her district of supervision; or (4) comes within the provisions of paragraph (b) of this section."

The existence of this regulation should remove all future doubts with respect to the issue raised in this appeal.

**9.** "No Bill of Attainder or ex post facto Law shall be passed."

tation of parole eligibility cannot be applied retroactively because they alter the situation of the offender to his disadvantage and thus violate the ex post facto clause. *See generally Rooney v. North Dakota,* 196 U.S. 319, 325, 25 S.Ct. 264, 49 L.Ed. 494 (1908); *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).

The government argues, on the other hand, that since the law has never provided that an escape does not toll a youth offender's sentence, the new regulation does not in any way alter the situation of the offender to his disadvantage and thus does not give rise to an ex post facto clause violation. The government contends that 28 C.F.R. § 2.10(b) merely restates prior law rather than effecting a change in prior law.

The government's position is correct. As the preceding subsection of this opinion has demonstrated, a youth offender's escape has always, regardless of the applicability of 28 C.F.R. § 2.10(b), tolled a Youth Corrections Act sentence. Consequently, Ogg's claim does not rise to an ex post facto clause violation.

## V. Conclusion

The order of the district court is *affirmed.*