Thomas Michael POWELL,
Petitioner-Appellee,

v.

U.S. BUREAU OF PRISONS, John Allman, Superintendent, etc., et al., Respondents,

Attorney General of the United States, Respondent-Appellant.

No. 81-1595.

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1983.

Before GOLDBERG, GEE and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A Mexican court convicted Thomas Michael Powell for a drug offense and sentenced him to six years, three months in prison, the term to commence on May 14, 1976, and end on August 13, 1982. Because of 336 days of work credits received by Powell during his imprisonment, the Mexican authorities changed the release date to September 8, 1981. On April 30, 1978, Powell was transferred to the United States pursuant to the Treaty between the United States and Mexico on the Execution of Penal Sentences (Treaty).[1] On September 22, 1978, the United States Parole Commission paroled Powell. During parole, Powell was arrested and convicted for using a communication device to facilitate the importation of marijuana and was given a new two-year sentence. Based on this conviction, the Parole Commission revoked Powell's parole and ordered that he serve to two years, four months and seventeen days, the aggregate of the new sentence and the parole violation term. The presumptive parole date was extended to March 1, 1982. This order forfeited Powell's Mexican work credits.

In his habeas petition, Powell argued below that the work credits permanently reduced his original sentence, preventing forfeiture of the credits when his parole was revoked. Rejecting the magistrate's recommendation that the Mexican courts should determine the issue,[2] the district court granted the writ of habeas corpus and ordered that Powell's sentence be recomputed

James A. Rolfe, U.S. Atty., Cheryl B. Wattley, Asst. U.S. Atty., Dallas, Tex., Patrick J. Glynn, U.S. Parole Com'n, Bethesda, Md., for respondent-appellant.

Eliot Dana Shavin, Houston, Tex. (Court-Appointed), for petitioner-appellee.

1. Under the Treaty a citizen of the United States, convicted of a criminal offense in Mexico, is permitted to transfer from Mexican to American custody for the balance of the sentence provided certain conditions are met. The offense for which he has been convicted must be generally punishable in the United States and must be neither a political nor an immigration offense. The transferring offender must be both a national of the United States and not a domiciliary of Mexico. Only prisoners with a minimum of six months remaining on their sentences, and for whom no appeal or collateral attack is currently pending in the Mexican courts, are eligible for transfer. Finally, Mexico, the United States, and the transferring prisoner must each consent to the change in custody.

2. The district court opined that if the question were presented to a Mexican court, the decision would be favorable to petitioner, i.e., the 336 days of work credit would operate to reduce permanently the original sentence of the Mexican court. The court concluded, however, that it could not reasonably be expected that a

to restore the 336 days of work credit. Because we find that credits for work performed in a Mexican prison do not effect a permanent sentence reduction but can be forfeited for a parole violation after transfer, we reverse the finding of the district court.

### Mootness of the Case

■ Powell argues that this court cannot reach the issue of the effect of the work credits on his Mexican sentence because the appeal is moot. Because the full term of the sentence imposed by the Mexican court, without considering the effect of work credits, ended August 13, 1982, Powell asserts that a reversal of the district court's decision would have no practical effect. Powell's argument assumes that the time that has passed since his early release as a result of the district court's order of recomputation would be applied to the full term sentence. Yet the Supreme Court has held that "[m]ere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence." *Anderson v. Corall,* 263 U.S. 193, 196, 44 S.Ct. 43, 44, 68 L.Ed. 247 (1923). *See also Caballery v. United States Parole Commission,* 673 F.2d 43, 46 (2d Cir.1982). Therefore, a reversal of the decision of the district court would mean that Powell could be made to serve the time remaining on his sentence at the time of his court-ordered

decision could be reached before Powell's release date.

3. Powell relies on *Bowers v. United States Board of Parole,* 544 F.2d 898 (5th Cir.1977), in which the court determined that the case was mooted by petitioner's unconditional release. In that case, however, even if the district court's decision had been reversed, the petitioner would not have been subject to being reincarcerated because the controversy was over the procedures followed by the Parole Board. Here, the controversy is over the length of the sentence, and "the possibility remains that [Powell] can be reincarcerated." *Gill v. Garrison,* 675 F.2d at 601.

4. An analogous interpretation has been made of the Federal Youth Corrections Act, which provides in 18 U.S.C. § 5017(c):

A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the

early release. *See Gill v. Garrison,* 675 F.2d 599 (4th Cir.1982).[3]

■ Powell argues that Article V(3) of the Treaty requires that the time that has elapsed since he was released awaiting appeal in this case be credited to his Mexican sentence. Article V(3) provides:

No sentence of confinement shall be enforced by the Receiving State in such a way as to extend its duration beyond the date at which it would have terminated according to the sentence of the court of the Transferring State.

Powell asserts that under Article V(3), the United States may not enforce his Mexican sentence so as to extend it beyond August 13, 1982, "the date at which it would have terminated according to the sentence of the court of the Transferring State." We interpret the Treaty to mean that the date at which the sentence would have terminated is the time of expiration of the six-year, three-month period, not the specific date of August 13, 1982.[4] The expiration of that six-year, three-month period would not occur until Powell served the balance of the sentence that remained at the time of his release. As Powell is yet exposed to confinement under the Mexican sentence this case is not moot.

### Forfeiture of the Work Credits

■ Appellants argue that under the Treaty and the implementing legislation,

expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction.

Notwithstanding the reference to unconditional discharge six years from the date of the conviction, such sentences are interrupted and their termination dates correspondingly postponed when the committed youth offender is not actually serving the sentence. *See, e.g., Henrique v. United States Marshal,* 653 F.2d 1317 (9th Cir.1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1452, 71 L.Ed.2d 664 (1982) (abscondence from parole supervision); *Ogg v. Klein,* 572 F.2d 1379 (9th Cir.1978) (escape from confinement); *United States v. Marshall,* 532 F.2d 410 (5th Cir.1976) (civil contempt sentence); *Frye v. Moran,* 302 F.Supp. 1291 (W.D.Tex.1969), *aff'd without ruling on issue,* 417 F.2d 315 (5th Cir. 1969) (bail pending appeal).

work credits are to be treated as credits in the nature of good time that can be forfeited for parole violations rather than as sentence reductions. The Treaty provides in Article V(2):

> Except as otherwise provided in this Treaty, the completion of a transferred offender's sentence shall be carried out according to the laws and procedures of the Receiving State, including the application of any provisions for reduction of the term of confinement by parole, conditional release, or otherwise. . . .

The treatment of work credits after parole revocation is not "otherwise provided" for in the Treaty, so the laws of the United States apply.[5]

■ The Treaty's implementing legislation treats foreign work credits as good time credits. 18 U.S.C. § 4105(c)(1) provides that "all credits for good time, for labor or any other credit" given by the transferring country shall be combined with good time credits subsequently awarded by the United States to provide a release date for the offender under 18 U.S.C. § 4164. This court has held that good time credits do not reduce the sentence imposed by a court; rather, "good time is a conditional right that may be forfeited upon violation of the conditions of the prisoner's release." *Frierson v. Rogers,* 289 F.2d 234, 235 (5th Cir.1961). *See also Granville v. Hogan,* 591 F.2d 323 (5th Cir.1979); *Lambert v. Warden,* 591 F.2d 4 (5th Cir.1979). As work credits are treated like good time credits under the implementing legislation, they, too, are forfeitable.[6] 18 U.S.C. § 4105(c)(4)

provides that "[a]ll credits toward service of the sentence, other than the credit for time in custody before sentencing, may be forfeited as provided in section 4165 of this title. . . ." Section 4105(c)(4) is not directly applicable to Powell because § 4165 refers to forfeiture of credits for violations of the rules of the institution *during the time of imprisonment,* but it nonetheless demonstrates that the congressional interpretation of the Treaty was that work credits be considered an early release measure in the nature of good time credits, not immutable sentence reductions.

■ Powell relies on Article VI and Article V(3) to support his argument that the Mexican work credits effected a permanent sentence reduction that cannot be changed by United States authorities. Article VI provides:

> The Transferring State shall have exclusive jurisdiction over any proceedings, regardless of their form, intended to challenge, modify or set aside *sentences handed down by its courts.*

Article V(3) provides:

> No Sentence of confinement shall be enforced by the Receiving State in such a way as to extend its duration beyond the date at which it would have terminated according to the *sentence of the court* of the Transferring State.

(emphasis added).

Powell's argument proves too much. Both articles refer to the "sentence of the court." Powell's work credits were not part of the sentence of the court of Mexico but were administratively awarded credits for early release from his sentence. Likewise, the Mexican sentence computation document,

---

**5.** We observe that, were Mexican law to guide our decision, Article 81 of Mexico's Penal Code states that there shall be a reduction of a prisoner's time to be served for every two days work, *provided* that the prisoner observes good conduct, participates regularly in the educational activities that are organized in the institution and otherwise shows social readjustment, this last condition being indispensable. Thus, the award of work credits is conditional and subject to forfeiture.

**6.** Powell points out that the United States Parole Commission has determined that street credits earned by transferees under the Treaty

while on parole in Mexico may not be forfeited for parole violations committed in the United States. *See* 1977 U.S.Code Cong. & Ad.News 3146, 3157 (time served on parole before revocation must be credited). Street credits are not like work credits, however, because they represent time actually served. A forfeiture of street credits would be a forfeiture of time served and would result in an extension of the time of the sentence. A forfeiture of work credits is not a forfeiture of time served but rather a forfeiture of an early release credit like good time.

which sets the release date as September 8, 1981 because of the work credits awarded, is an administrative, not a court document. The work credits recorded in that document are not evidence of modification of the judicially imposed sentence.[7] Powell's original sentence will "terminate[ ] according to the sentence of the Court" when he has served the six years and three months required by that sentence. As the work credits awarded him did not permanently reduce that sentence but were subject to forfeiture upon parole violation, the judgment of the district court is REVERSED.

---

**7.** Article VI(7) of the Treaty distinguishes between the sentence computation document and the document recording the sentence of the court and modifications thereof. That article provides:

The Transferring State shall furnish the Receiving State a statement showing the offense of which the offender was convicted, the duration of the sentence, the length of time already served by the prisoner and any credits to which the offender is entitled, such as, but not limited to work done, good behavior or pretrial confinement. Such statement shall be translated into the language of the Receiving State, and duly authenticated. The Transferring State shall also furnish the Receiving State a certified copy of the sentence handed down by the competent judicial authority and any modifications thereof.