John Brett ALLEN, Petitioner-Appellee,

v.

John T. HADDEN, Warden and the U.S. Parole Commission, Respondents-Appellants.

No. 83–1502.

United States Court of Appeals, Tenth Circuit.

July 10, 1984.

Toby D. Slawsky, Atty., U.S. Parole Commission, Chevy Chase, Md. (Joseph A. Barry, General Counsel, U.S. Parole Commission, and Patrick J. Glynn, Atty., U.S. Parole Commission, Chevy Chase, Md., and Robert N. Miller, U.S. Atty., and Douglas W. Curless, Asst. U.S. Atty., District of Colorado, Denver, Colo., with him on the briefs), for respondents-appellants.

Scott H. Robinson of Gerash & Robinson, P.C., Denver, Colo., for petitioner-appellee.

Before BARRETT, LOGAN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Warden John Hadden and the United States Parole Commission appeal from the district court's order remanding to the Commission its parole decision regarding John Brett Allen. *Allen v. Hadden,* 558 F.Supp. 400 (D.Colo.1983) (*Allen II*). We have determined that the appeal is well-founded, and accordingly we reverse the district court's decision.

## I.

Pursuant to 18 U.S.C. §§ 4201 *et seq.* (1982), the Parole Commission has adopted a regulation that provides guidelines for determining when parole normally should be granted. *See* 28 C.F.R. § 2.20 (1983). The regulation establishes a grid. One co-ordinate of the grid contains a "salient factor score" which attempts to evaluate a prisoner's potential risk of violating parole.[1] The other coordinate contains a severity rating which reflects the severity of the prisoner's underlying offense.[2] Once the Parole Commission has determined the score and rating for a prisoner, the grid provides a suggested range of time that the prisoner should serve before being released on parole.

The time ranges given are not mandatory; they are merely guidelines. "Where the circumstances warrant," the Commission may choose a presumptive parole date outside the guidelines, either above or below the suggested time range. *Id.* § 2.20(c). Similarly, while the regulation provides instructions for rating certain offense behaviors, "especially mitigating or aggravating circumstances in a particular case may justify a decision or a severity rating different from that listed." *Id.* § 2.20(d). Thus, the regulation attempts to "promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making without removing individual case consideration." *Id.* § 2.20(a)

On April 3, 1981, the regional parole commissioner reviewing Allen's case assigned him a presumptive parole date of 78 months based on a severity rating of Greatest II and a salient factor score of 10. The guidelines then in effect suggested a presumptive parole date of 52 months or more under such circumstances. *See* 28 C.F.R. § 2.20 (1980). Since Allen had served about 22 months by the date of the decision, the order prohibited Allen's release any time earlier than November 6, 1985.

Allen took an administrative appeal, as a result of which the National Appeals Board

---

1. The salient factor score is derived from an evaluation sheet which considers inter alia the prisoner's prior convictions and commitments, age, recent commitment-free period, and drug dependence. From this information, the prisoner can score from one to ten. At the time of Allen's evaluation, a prisoner could score from one to eleven. *See* 28 C.F.R. § 2.20 (1980). The higher the score, the better are the prospects that the prisoner will not violate his parole.

2. The regulation now contains eight categories in the severity rating, numbered one through eight. The more severe the offense committed, the higher the category number. At the time of Allen's evaluation, however, the severity rating contained only seven categories, classified in order of ascending severity as follows: Low, Low Moderate, Moderate, High, Very High, Greatest I, Greatest II. *See* 28 C.F.R. § 2.20 (1980).

downgraded his severity rating from Greatest II to Greatest I. With the downgraded severity rating and his salient factor score of 10, the guidelines indicated a presumptive parole date between 40 and 52 months. Nevertheless, the Board affirmed the presumptive parole date of 78 months originally issued by the regional commissioner. The Board set forth a number of aggravating factors which it felt justified going above the guidelines.

Allen then brought this habeas corpus petition in federal district court under 28 U.S.C. § 2241 (1982), alleging inter alia that in going above the guidelines, the Parole Commission had used as aggravating factors the same facts that it had used to determine his offense severity rating and his salient factor score. *See Allen v. Hadden*, 536 F.Supp. 586 (D.Colo.1982) (*Allen I*). The district court agreed, and on this ground and others the court remanded Allen's case to the Commission for a redetermination of Allen's presumptive parole date. *Id.* at 598. Specifically, the court ordered that

> "[n]one of the factors used to determine offense severity or petitioner's salient factor score shall also be used as justification for making a parole determination outside of the guidelines .... [T]he respondents shall make a determination of petitioner's parole status ... within sixty (60) days of the date of this order. If such a determination is not made within this time, the petitioner may petition this court for further appropriate relief. This court will therefore retain jurisdiction to issue any orders that shall be necessary in the future."

*Id.* at 600.

Respondents initially appealed the order, but they dismissed the appeal when the Parole Commission issued a new Notice of Action on June 4, 1982, which established a presumptive parole date of 60 months. Allen's salient factor score remained 10, but his severity rating was further downgraded from Greatest I to Very High for his underlying offense. Additionally, the Commission factored in Allen's escape and absence from a federal prison for more than seven days. Although the combined guideline range for such date was 32 to 48 months, the Commission chose to go above the guidelines. Allen returned to the district court, which ruled that the Commission had failed to follow the court's earlier order by again using the same factors both to determine Allen's severity rating and to go above the guidelines. *See Allen II*, 558 F.Supp. at 403. The court declared that "if compliance with this order is not obtained within the sixty (60) day period or reasonable, but limited, extension thereof for good cause shown, I shall grant the petition and issue the writ." *Id.* at 404. Respondents then brought this appeal, alleging the district court erred in holding that the Commission had double-counted certain facts in going above the guidelines.

## II.

This case is controlled by our recent decision in *Sotelo v. Hadden*, 721 F.2d 700 (10th Cir.1983), decided after the district court's second decision. As in the present case, the Parole Commission in *Sotelo* decided to make a parole determination above the guidelines. The Commission determined Sotelo's offense severity on the bases that: (1) Sotelo was involved in the distribution of more than fifty grams of pure heroin; (2) Sotelo had a managerial and proprietary interest in the distribution; and (3) Sotelo jumped bond and failed to appear on the heroin charge for approximately two years. 721 F.2d at 701–02. The reasons given for going above the guidelines were: (1) Sotelo's leadership role in the heroin distribution; (2) the magnitude of the operation; and (3) that the operation was ongoing for one and one-half years. *Id.* at 702. Sotelo argued that the facts used by the Parole Commission to justify going above the guidelines were the same as those given for assigning his offense severity, and that such double-counting is impermissible.

We held in *Sotelo* that the facts relied on for each determination were not the same. Obviously, some relationship exists be-

tween Sotelo's involvement in the distribution of more than fifty grams of pure heroin and the magnitude of the operation. Similarly, Sotelo's managerial interest and leadership role in the heroin distribution are related factors. That these factors are related, however, does not mean they are the same.

"[T]here is a great difference between distributing only 50 grams of heroin and distributing 100 pounds of heroin a month, the magnitude of the latter obviously being much greater than that of the former .... Also, a 'leadership role' in the distribution scheme is not necessarily identical to the finding that Sotelo also had a 'managerial' or 'proprietary' interest in the distribution. In short, the reasons given by the Board for going above the guidelines are not the same as the factors relied on by the Board in rating Sotelo's offense severity."

*Id.*

In the present case, the Parole Commission's June 4, 1982 Notice of Action reads as follows:

"Your offense behavior has been rated as very high severity insofar as it involved importation and possession with intent to distribute quantities of marijuana totaling 3300 pounds. You have a salient factor score of 10. You have been in custody a total of 37 months. Guidelines established by the Commission for adult cases indicate a range of 26 to 36 months imprisonment for cases with good institutional program performance and adjustment.

"You escaped from a federal prison camp and remained absent more than seven days. Guidelines established by the Commission indicate an additional range of 6 to 12 months imprisonment for that conduct.

"After review of all relevant factors and information presented, a decision above the combined guideline range (32 to 48 months) is found to be warranted because you are a poorer parole risk than indicated by your salient factor score. This conclusion is based on (1) your se-

ries of three major marijuana offenses over five years, which is indicative of a commitment to a criminal career, and (2) the fact that two of those three offenses were committed while you were on appeal bond from the first conviction." Rec., vol. I, at 153–54.

The factors used to determine Allen's salient factor score are not at issue on appeal. Rather, Allen raises basically the same argument as Sotelo. He contends that the Parole Commission double-counted his three marijuana convictions by using them to arrive at his Very High severity rating and also to justify going above the guidelines. The Parole Commission cumulated his three marijuana convictions in order to reach the total poundage of marijuana used to assign him a Very High offense severity rating. It then used the fact that he had been involved in three separate offenses as one of the aggravating factors justifying going above the guidelines. In our view, this use of the three convictions does not amount to double-counting. On the contrary, an even greater disparity exists between the factors used in this case than we found to exist between the factors used in *Sotelo*.

■ The total poundage of marijuana involved in the deals with which Allen was associated provides a measure of the severity of his offenses. However, that this poundage was amassed in three separate transactions is an additional factor which was not directly calculated into Allen's offense severity determination. A single drug transaction, even involving a substantial quantity, is quite different from continual flouting of the drug laws. The difference is especially apparent in the present case where Allen's second and third drug offenses occurred after an initial conviction for a serious drug infraction and during the period that Allen was released on an appeal bond. The Commission thus believes that the pattern and timing of the marijuana transactions indicate that Allen is a poorer than usual parole risk.

"Judicial review of Parole Board decisions is narrow. The standard of review of

action by the Parole Commission is whether the decision is arbitrary and capricious or is an abuse of discretion." *Dye v. United States Parole Commission,* 558 F.2d 1376, 1378 (10th Cir.1977). *See Sotelo,* 721 F.2d at 702. Under this standard, we perceive no basis for setting aside the agency's decision to set a presumptive parole date above the guidelines.

### III.

Allen argues that even if we find *Sotelo* determinative of this case, the Commission is barred from raising the issue by its failure properly to prosecute an appeal from the first ruling of the District Court in *Allen I.* Reply Brief of Petitioner-Appellee at 15. We disagree, because the district court's first decision was not a final order. A district court's duty in entertaining an application for a writ of habeas corpus is to "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243 (1982); *see Browder v. Director, Department of Corrections,* 434 U.S. 257, 266, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978). When a judge orders a prisoner discharged if the state does not retry him within 60 days, that is a final order. *Id.* Although the order is conditional, nevertheless it is a final disposition of the disputed matters based on the court's understanding of the law and on its findings of fact. *See id.* at 265–67, 98 S.Ct. at 561–62. The order decides that the prisoner is entitled to release, absent correction by retrial or otherwise of the procedural or substantive error that gave rise to the petition.

The district court's order in *Allen I* did not state that it would grant Allen's petition. Rather, it ordered the Parole Commission to redetermine Allen's parole status without double-counting, and said that if the commission failed to comply,

Allen could "petition this court for further appropriate relief. This court will therefore retain jurisdiction to issue any orders that shall be necessary in the future." *Allen I,* 536 F.Supp. at 600. The court did not state what relief, if any, it would grant. In our view, an order that contains no affirmative statement of the relief granted or to be granted is not final for purposes of appellate review under 28 U.S.C. § 1291. By comparison, the district court's second order required the Parole Commission to correct its Notice of Action or Allen's petition would be granted. *Allen II,* 558 F.Supp. at 404. That is a reviewable final order.

Because the district court's first order was merely collateral, respondents could not have appealed it under 28 U.S.C. § 1291. Nor would it matter that respondents might have been able to take an interlocutory appeal from this first order under 28 U.S.C. § 1292.[3] The right to take an authorized interlocutory appeal is permissive, not mandatory. If no interlocutory appeal is taken, the order remains subject to revision by the trial court, and on appeal from the final judgment the appellate court can determine all matters appropriately raised without regard to the interlocutory decree below. *See Yamamoto v. Omiya,* 564 F.2d 1319, 1325 n. 11 (9th Cir.1977); 9 J. Moore, Federal Practice ¶ 110.25[2] (2d ed. 1983); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure: Jurisdiction § 3921, at 11 (1977). Accordingly, respondents retained the right to appeal both of the district court's orders.

### IV.

Allen also argues that this appeal was mooted by the Parole Commission's compliance with the district court's February 1983 decision.[4] This claim is without

---

3. We need not decide whether respondents in fact could have pursued an interlocutory appeal from the first order.

4. Subsequent to this appeal, the Parole Commission issued a new Notice of Action determining

a presumptive parole date of 48 months and stating:

"No departure from the guidelines is found to be warranted within the constraints of the District Court's order.

"....

merit. In *Eagles v. United States,* 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308 (1946), the Court made clear that the controversy remains alive in cases such as these:

"Our rules recognize the beneficient function of the writ ... by providing that a prisoner to whom the writ has been granted may, pending appeal, be enlarged on a recognizance .... The fact that he has been so enlarged does not render the appeal of the custodian moot. In such a case the release is obtained through the assertion of judicial power. It is the propriety of the exercise of that power which is in issue in the appellate court, whether the prisoner is discharged or remanded to custody. Though the writ has been granted and the prisoner released, the appellate court by what it does is not rendering an opinion and issuing an order which cannot affect the litigants in the case before it.... Affirmance makes the prisoner's release final and unconditional. Reversal undoes what the habeas corpus court did and makes lawful a resumption of the custody."

*Id.* at 307–08, 67 S.Ct. at 315–16 (citations and footnotes omitted). *See also Campbell v. United States Parole Commission,* 704 F.2d 106, 109 n. 2 (3rd Cir.1983); *Powell v. United States Bureau of Prisons,* 695 F.2d 868, 870 (5th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 113, 78 L.Ed.2d 114 (1983).

Reversed and remanded with directions to dismiss the petition.

---

"This decision is made solely to comply with the above order of the United States District Court for the District of Colorado [Allen v. Hadden. No. 81–K–1863 (February 15, 1983)]. The Commission reserves the right to void this decision if the above court order is reversed."

Rec., vol. I, at 165–66.