# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 2, 2008

Charles R. Fulbruge III
Clerk

No. 06-60434

RICHARD JOHN WELSH

Petitioner

v.

UNITED STATES PAROLE COMMISSION

Respondent

Petition for Review of an Order of the
United States Parole Commission

Before REAVLEY, STEWART, and OWEN, Circuit Judges.

REAVLEY, Circuit Judge:

Richard John Welsh, a United States citizen convicted of two separate offenses in Mexico and subsequently transferred to the United States pursuant to a transfer treaty, seeks review of the release date determined by the United States Parole Commission. Welsh contends that the Parole Commission's release date results in a combined term of imprisonment and supervised release that exceeds the term of imprisonment the Mexican courts imposed because the Parole Commission erroneously construed his two Mexican judgments to run consecutively rather than concurrently. We conclude that no error is shown, and we deny the petition.

## I. Facts and Proceedings

On October 8, 2004, Mexican state police arrested Welsh in Reynosa, Tamaulipas, Mexico, and charged him with home burglary. Police subsequently served Welsh with an outstanding warrant for robbery in a separate case.[1] In April 2005 Welsh was convicted of the robbery offense, and the Mexican court sentenced him to four years in a Mexican prison. In July 2005 Welsh was convicted of the home burglary offense and sentenced to a term of imprisonment of three years and two months.

In October 2005 Welsh submitted two petitions for a transfer to the United States pursuant to a prisoner transfer treaty between the United States and Mexico.[2] As part of the Treaty, the Parole Commission must determine a release date for a transferred prisoner conforming to the sentence imposed by the foreign court.[3] Welsh indicated in his first transfer petition that he had served one year and one day of his sentence for robbery and had six years, one month and 29 days remaining on his sentence. In the second petition, Welsh indicated that he had served one year and four days of the sentence for burglary and had six years, one month, and 24 days remaining to be served. Documents from the Mexican authorities also indicated that Welsh's two sentences were to run consecutively. The Parole Commission conducted a transfer hearing and determined that, based on a total Mexican sentence of seven years and two

---

[1] Although Welsh was charged with "robbery," it appears that the offense would be recognized as burglary in the United States. We will refer to Welsh's two offenses as burglary and robbery to be consistent with the Mexican charges and to differentiate between the two.

[2] See Treaty Between the United States of America and the United Mexican States on the Execution of Penal Sentences, U.S.–Mex., Nov. 25, 1976, 28 U.S.T. 7399 ("the Treaty").

[3] See 18 U.S.C. § 4106A(b)(1)(A) & (C).

months, Welsh's release date from imprisonment should be February 10, 2007, to be followed by 36 months of supervised release.[4]

## II. Discussion

Welsh appeals the Parole Commission's decision, arguing that his release date is erroneous.  When a prisoner is transferred to the United States to complete a sentence of imprisonment, the Parole Commission determines the prisoner's release date and a period and conditions of supervised release as though the prisoner were convicted in a United States district court of a similar offense.[5]  However, "the Commission may not authorize a release date which results in the total period of incarceration, plus the period of supervised release, being less than or greater than the total foreign-court-imposed sentence."[6]

The Parole Commission's determination may be appealed to the United States Court of Appeals for the circuit in which the offender is imprisoned.[7]  We decide the appeal in accordance with 18 U.S.C. § 3742, reviewing the Parole Commission's determination as though it had been a sentence imposed by the United States district court.[8]  We review de novo a sentence that allegedly exceeds the maximum authorized by statute.[9]  We accept the Parole Commission's factual findings unless clearly erroneous.[10]

---

[4]  Welsh has since completed his term of incarceration and is currently serving his supervised release term.

[5]  18 U.S.C. § 4106A(b)(1)(A).

[6]  Cannon v. U.S. Dep't of Justice, U.S. Parole Comm'n, 973 F.2d 1190, 1192 (5th Cir. 1992).

[7]  § 4106A(b)(2)(A).

[8]  Navarrete v. U.S. Parole Comm'n, 34 F.3d 316, 318 (5th Cir. 1994) (citing 18 U.S.C. § 4106A(b)(2)(B)).

[9]  United States v. Ferguson, 369 F.3d 847, 849 (5th Cir. 2004).

[10]  Navarrete, 34 F.3d at 318.

Welsh does not challenge the sentences of the Mexican courts.[11]  Instead, he argues that the Parole Commission erroneously construed his Mexican sentences to be consecutive.  He concedes that documents sent by the Mexican authorities indicate that the two sentences run consecutively, but he contends that the sentences were actually concurrent.  Welsh relies on two documents that he claims to be from his Mexican convictions.  A translation from the document in the robbery conviction states that the four-year sentence "will be calculated beginning [October 12, 2004,] the date when according to the record he was imprisoned regarding the present acts or otherwise beginning when he has served any other sentence depriving him of liberty that may have been previously given to him."  The translation of the document for the home burglary conviction, which was imposed after the sentence for robbery, states that the three-year-and-two-month sentence will "be computed beginning on [October 8, 2004, the] date in which according to the record he was imprisoned because of the instant deeds."

Welsh reasons that at the time of the first sentence for robbery there was no "other sentence depriving him of liberty" previously imposed; therefore, that sentence began on October 12, 2004.  He further reasons that because the second sentence for burglary began on October 8, 2004, and was not ordered to run consecutive to the robbery sentence, both sentences ran concurrently and the Treaty precluded the Parole Commission from authorizing a release date that exceeded a maximum of four years from the time that his sentences began

---

[11] Indeed, Welsh is foreclosed by the terms of the Treaty from challenging his Mexican convictions and sentences in the United States because Mexico retains "exclusive jurisdiction over any proceedings, regardless of their form, intended to challenge, modify or set aside sentences handed down by its courts." Treaty, art. VI, 28 U.S.T. 7399.  Rather than trying to challenge, modify, or set aside his sentence, Welsh disputes the manner in which the Parole Commission determined what his Mexican sentence was when determining his release date, a dispute over which we have jurisdiction.  See 18 U.S.C. § 4106A(b)(2)(A).

running. He further argues that to the extent any documents from the Mexican court conflict with the sentencing order, the oral pronouncement controls.

At oral argument, Welsh clarified his view that under our decision in Powell v. U.S. Bureau of Prisons[12] the Parole Commission was limited to examining only the purported sentencing documents upon which he now relies. Under this view, the Parole Commission would be precluded from examining any other Mexican documents for evidence of Welsh's sentence. The issue, then, is whether the Parole Commission was required to determine Welsh's release date by looking only to the translated sentencing documents and to ignore any other documents from Mexico.

In Powell, we addressed the effect that should be given to work credits previously earned in Mexico when a transferred prisoner is paroled in the United States but commits a parole violation. Because work credits are not otherwise provided for in the Treaty, we held that the laws of the United States apply so that when a prisoner's parole is revoked any previously earned work credits are treated like good time credits and are subject to forfeiture.[13] We rejected Powell's argument that the work credits had permanently reduced the sentence, noting that the credits were not part of the original Mexican sentence and had been administratively awarded.[14] We also noted that the work credits recorded in a Mexican sentence computation document were not evidence of a modification to the judicially-imposed sentence because that document, too, was an administrative document.[15]

---

[12] 695 F.2d 868 (5th Cir. 1983).

[13] Powell, 695 F.2d at 871–72.

[14] Id.

[15] Id. at 872.

The lesson of Powell is that authorities in the United States may not change the sentence imposed by a Mexican court, and we eschewed reliance on mere administrative documents as evidence of the sentence. But we specifically noted that the Treaty distinguishes between mere "sentence computation" documents and documents "certified" by the transferring state pursuant to the Treaty as recording the sentence of the court.[16]

Under art. IV, § 7 of the Treaty, Mexico "shall furnish" to the United States at the time of a transfer "a statement showing the offense of which the offender was convicted, the duration of the sentence, the length of time already served by the prisoner and any credits to which the offender is entitled."[17] The statement must be translated and "duly authenticated."[18] Mexico is also required to provide a "certified copy of the sentence handed down by the competent judicial authority and any modifications thereof."[19]

In the instant case, the record contains several documents that appear to be certified.[20] Buried within the record are two Spanish-language documents that may certify the copies of the sentences. There are no English translations of these documents, however, and there does not appear to be any mention of the Treaty. Their placement within the record does not clearly connect the certification with the sentences.

---

[16] Id. at 872 n.7.

[17] Treaty, art. IV, § 7, 28 U.S.T. 7399.

[18] Id.

[19] Id.

[20] The record in this case is a jumble of pages, some translated and some untranslated, often duplicative, unnumbered and in no order. The Parole Commission and counsel have exercised no care to afford this court with an understandable record where we are asked to decide a prisoner's freedom from incarceration.

On the other hand, the record also contains a document from the Mexican State Department of Public Security in both English and Spanish that indicates Welsh's sentences were to run consecutively. This document indicates on its face that it is a certification of the sentence pursuant to the Treaty. Although the record in this case is disjointed and confusing, and the exact nature of this document is also not entirely clear, what is clear is that this document appears to be the only one certified pursuant to the Treaty. We do not read Powell as requiring the Parole Commission to ignore such a document. Indeed, the statutes implementing the Treaty for the United States require the Parole Commission to consider "any documents provided by the transferring country" along with any recommendation by the United States Probation Service when determining the prisoner's release date.[21]

The preservation of comity between sovereign states is of paramount importance in the Treaty. As noted in Cannon, Congress has recognized that no country would accept a treaty "'which would permit the courts of the Receiving State to set aside or modify a sentence imposed by the courts of the Transferring State. Otherwise the fundamental sovereignty of a nation over crimes committed within its territorial boundaries would be impaired.'"[22] The preservation of the transferring state's sentence is served by the Treaty provision for a certification of the sentence from that state. To ignore a document certified on its face pursuant to the Treaty would impair the sovereignty of the transferring state.

---

[21] 18 U.S.C. § 4106A(b)(1)(B); see also 18 U.S.C. § 4105(c)(1) (providing that certain sentencing credits are applied "for a sentence of the length of the total sentence imposed and certified by the foreign authorities" (emphasis added)).

[22] Cannon v. U.S. Dep't of Justice, U.S. Parole Comm'n, 973 F.2d 1190, 1192 (5th Cir. 1992) (quoting H.R. REP. NO. 95-720, 95th Cong., 1st Sess., at 42 (1977), as reprinted in 1977 U.S.C.C.A.N. 3146, 3164–65).

To this end, absent a clear error or a manifest injustice, we believe that authorities in the United States must be permitted to rely on documents certified pursuant to the Treaty and that purport to show the transferred prisoner's foreign sentence. There must be a clear and indisputable legal error resulting from the Parole Commission's release date determination before a transferred prisoner may obtain relief. We do not find that Welsh has shown a clear legal error.

The English translations of the sentencing documents upon which Welsh relies do not indicate any certification under the Treaty, and they are ambiguously phrased. The sentencing document for robbery refers to a potentially previous sentence even though there was no previously imposed sentence, and the second sentencing document for burglary refers to no other sentence even though that sentence was computed to begin four days before the previously imposed robbery sentence. Taken together, the sentences could be read to run concurrently, but we do not agree that they must be read that way as neither sentence references concurrency and one suggests the possibility of consecutive terms. Furthermore, Welsh's own transfer petitions, signed by Welsh and representatives from Mexico and the United States, represented that the sentences were consecutive.

We cannot say based on the current record that the certification of the sentences as consecutive was clearly wrong. We leave for another day consideration of the remedy should a prisoner show that a certification from the transferring state is clearly wrong. We conclude that the Parole Commission did not commit a legal error in its release date determination.

PETITION DENIED.

8